Asghar v. Garland, Not Reported in Fed. Rptr. (2023)

Case 2:25-cv-00306-JRS-MJD    Document 10-1    Filed 08/01/25    Page 1 of 65 PageID #: 52

2023 WL 5928492
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Mudasar ASGHAR, Petitioner,

v.

Merrick B. GARLAND, Attorney General, Respondent.

No. 21-1290
|
Argued and Submitted April
21, 2023 Pasadena, California
|
FILED SEPTEMBER 12, 2023

On Petition for Review of an Order of the Board of Immigration Appeals, Agency No. AXXX-XX1-527

Before: WARDLAW and KOH, Circuit Judges, and McMAHON, District Judge. *

---

*      The Honorable Colleen McMahon, United States District Judge for the Southern District of New York, sitting by designation.

---

ORDER

**\*1**  The memorandum disposition filed on June 5, 2023, is amended and filed concurrently with this order. With that, the panel has unanimously voted to deny the petition for panel rehearing. No future petitions for rehearing will be entertained.

**DENIED.**

AMENDED MEMORANDUM **

---

**      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

---

Mudasar Asghar, a native and citizen of Pakistan, appeals from a Board of Immigration Appeals (BIA) decision affirming an Immigration Judge's (IJ's) denial of asylum, withholding of removal, and protection under the Convention Against Torture (CAT). As the parties are familiar with the facts, we do not restate them here. We have jurisdiction under 8 U.S.C. § 1252. We deny the petition.

1. "Taking the totality of the circumstances into account," substantial evidence supports the agency's adverse credibility determination. *Kumar v. Garland*, 18 F.4th 1148, 1153 (9th Cir. 2021). The agency's determination turns on implausible statements made at Asghar's merits hearing and critical inconsistencies pertaining to his protection claim. For example, Asghar claimed he was unaware that he could obtain a visa to travel to the United States or enter the country at a land-based port of entry. However, the petitioner has an extended history of travel to multiple countries, including a months-long stay in Russia, and has obtained visas to travel to such countries. The agency properly deemed this statement, and others regarding Asghar's ability to report his assault to police, implausible.

The agency also identified multiple inconsistencies between statements made at Asghar's credible fear interview and at his merits hearing. These inconsistencies, regarding Asghar's reasons for leaving Pakistan, his prolonged stay in Russia, and his possible conversion to Shia Islam, are relevant to his protection claim and were not explained in his testimony, and though Asghar offered explanations for these inconsistencies at the hearing, the agency "reasonably reject[ed]" them or properly deemed them implausible. *Barseghyan v. Garland*, 39 F.4th 1138, 1143 (9th Cir. 2022). For example, at his credible fear interview, Asghar claimed that he never considered leaving Pakistan before he was assaulted in June 2019. Yet at his merits hearing, Asghar admitted to meeting in May with his travel agent, who "explain[ed] the possibility" of Asghar departing Pakistan for the United States." This inconsistency relates directly to Asghar's motivation for fleeing Pakistan and Asghar failed to adequately explain it in the hearing.

Similarly, Asghar provided contradictory statements about whether he converted to Shia Islam before leaving Pakistan. In his I-589 application for asylum, Asghar stated that both he and his wife, Fatima Nadeem, were persecuted for "changing our sect from Sunni and Shia to Ahle-Tashi," the latter of which is synonymous with Shia Islam. Yet, at his merits hearing, Asghar confirmed that he "did not become Shiite," though neighbors may have suspected that he converted. The agency properly relied on these and other inconsistencies in making its adverse credibility determination.

Case 2:25-cv-00306-JRS-MJD    Document 10-1    Filed 08/01/25    Page 2 of 65 PageID #: 53

Asghar v. Garland, Not Reported in Fed. Rptr. (2023)

**\*2** Finally, the agency's demeanor finding "specifically and cogently" referenced hearing testimony in which the petitioner appeared to grow agitated and combative. *Arulampalam v. Ashcroft*, 353 F.3d 679, 685 (9th Cir. 2003). The agency noted Asghar's "audibly agitated demeanor" when responding to questioning by government counsel. The trial transcript reflects multiple confrontations between Asghar and government counsel during cross examination that support the agency's conclusion. For example, responding to the government attorney's presentation of social media posts suggesting that Asghar may have made misleading statements about his visits to Russia, Asghar appears to grow increasingly frustrated.

Under the "extremely deferential" substantial evidence standard, *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003), we are not "compelled to conclude" that the agency erred in its adverse credibility determination. 8 U.S.C. § 1252(b)(4)(B).

2. Asghar was not prejudiced by incompetent translation at his merits hearing in violation of his due process rights. While "[i]t is long-settled that a competent translation is fundamental to a full and fair hearing," *Perez-Lastor v. INS.*, 208 F.3d 773, 778 (9th Cir. 2000), to establish a due process violation based on incompetent translation, a petitioner must (1) provide evidence of mistranslation and (2) establish prejudice by demonstrating "that a better translation would have made a difference in the outcome of the hearing." *Acewicz v. INS.*, 984 F.2d 1056, 1063 (9th Cir. 1993) (citing *Tejeda-Mata v. INS*, 626 F.2d 721, 727 (9th Cir. 1980)).

Here, the trial transcript contains some evidence of mistranslation, including "direct evidence of incorrectly translated words, unresponsive answers by the witness, and the witness' [sic] expression of difficulty understanding what is said to him." *Siong v. INS.*, 376 F.3d 1030, 1041 (9th Cir. 2004). However, most of these errors were corrected through further questioning or requests for clarification. *See Kotasz v. INS.*, 31 F.3d 847, 850 n.2 (9th Cir. 1994) (stating that translation errors may be "rectified" through "[c]larification or repetition" at a petitioner's hearing).

Ultimately, Asghar was not prejudiced by instances of incompetent translation that remained unclarified. "When the BIA bases its denial of an asylum claim on an adverse credibility finding, as it did here, evidence that the translation

caused the BIA to disbelieve the petitioner's testimony is sufficient to show prejudice." *Perez-Lastor*, 208 F.3d at 780 n.8. Here, the unclarified translation errors were relatively minor and did not outweigh the substantial evidence supporting the agency's adverse credibility finding. As such, Asghar has not provided sufficient evidence that translation errors caused the agency to disbelieve his testimony, in light of voluminous, properly translated testimony supporting the agency's adverse credibility determination.

3. Substantial evidence supports the agency's conclusion that Asghar failed to carry his burden of proof, independent of his testimony, on his asylum, withholding, and CAT claims. *See Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022) ("[F]actual findings underlying the BIA's determination that a petitioner is not eligible for asylum, withholding of removal, or CAT relief" are reviewed for "substantial evidence."). The agency properly observed that the country conditions evidence in this case is mixed, and Asghar offers no further evidence in support of his protection claims. Asghar instead argues that the agency's cursory treatment of such evidence warrants remand, analogizing his case to *Davila v. Barr*, 968 F.3d 1136 (9th Cir. 2020), in which we remanded to the BIA based on its "selective[ ]" citation to country conditions evidence. *Id.* at 1143.

**\*3** But here, the agency properly reviewed equivocal country conditions evidence in the record. While the country conditions reports suggest that Shia Muslims are targeted by the government and certain sectarian groups, the same reports note that the Pakistani government has attempted to tamp down such violence. Thus, substantial evidence supports the agency's conclusion that "the same evidence demonstrates that the Pakistani government protects Shias and inter-sectarian couples from harm, and actively combats sectarian violence and discrimination towards such groups."

Asghar offers no other arguments to contest the agency's denial of asylum, withholding, and CAT protection. Accordingly, the agency's denial of relief was proper.

**PETITION DENIED.**

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 5928492

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                2

Case 2:25-cv-00306-JRS-MJD   Document 10-1   Filed 08/01/25   Page 3 of 65 PageID #: 54

Asghar v. Garland, Not Reported in Fed. Rptr. (2023)

2023 WL 3814035
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Mudasar ASGHAR, Petitioner,

v.

Merrick B. GARLAND, Attorney General, Respondent.

No. 21-1290
|
Argued and Submitted April
21, 2023 Pasadena, California
|
Filed June 5, 2023

On Petition for Review of an Order of the Board of Immigration Appeals, Agency No. AXXX-XX1-527

Before: WARDLAW and KOH, Circuit Judges, and McMAHON, District Judge. *

\*
The Honorable Colleen McMahon, United States District Judge for the Southern District of New York, sitting by designation.

## MEMORANDUM **

\*\*
This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**\*1** Mudasar Asghar, a native and citizen of Pakistan, appeals from a Board of Immigration Appeals (BIA) decision affirming an Immigration Judge's (IJ's) denial of asylum, withholding of removal, and protection under the Convention Against Torture (CAT). As the parties are familiar with the facts, we do not restate them here. We have jurisdiction under 8 U.S.C. § 1252. We deny the petition.

1. "Taking the totality of the circumstances into account," substantial evidence supports the agency's adverse credibility determination. *Kumar v. Garland*, 18 F.4th 1148, 1153 (9th Cir. 2021). The agency's determination turns on implausible statements made at Asghar's merits hearing and critical inconsistencies pertaining to his protection claim. For example, Asghar claimed he was unaware that he could obtain a visa to travel to the United States or enter the country at a land-based port of entry. However, the petitioner has an extended history of travel to multiple countries, including a months-long stay in Russia, and has obtained visas to travel to such countries. The agency properly deemed this statement, and others regarding Asghar's ability to report his assault to police, implausible.

The agency also identified multiple inconsistencies between statements made at Asghar's credible fear interview and at his merits hearing. These inconsistencies, regarding Asghar's reasons for leaving Pakistan, his prolonged stay in Russia, and his possible conversion to Shia Islam, are relevant to his protection claim and were not explained in his testimony, and though Asghar offered explanations for these inconsistencies at the hearing, the agency "reasonably reject[ed]" them or properly deemed them implausible. *Barseghyan v. Garland*, 39 F.4th 1138, 1143 (9th Cir. 2022). For example, at his credible fear interview, Asghar claimed that he never considered leaving Pakistan before he was assaulted in June 2019. Yet at his merits hearing, Asghar admitted to meeting in May with his travel agent, who "explain[ed] the possibility" of Asghar departing Pakistan for the United States." This inconsistency relates directly to Asghar's motivation for fleeing Pakistan and Asghar failed to adequately explain it in the hearing.

Similarly, Asghar provided contradictory testimony about whether he converted to Shia Islam before leaving Pakistan. At his credible fear interview, Asghar stated that both he and his wife, Fatima Nadeem, were persecuted for "changing our sect from Sunni and Shia to Ahle-Tashi," the latter of which is synonymous with Shia Islam. Yet, at his merits hearing, Asghar confirmed that he "did not become Shiite," though neighbors may have suspected that he converted. The agency properly relied on these and other inconsistencies in making its adverse credibility determination.

Finally, the agency's demeanor finding "specifically and cogently" referenced hearing testimony in which the petitioner appeared to grow agitated and combative. *Arulampalam v. Ashcroft*, 353 F.3d 679, 685 (9th Cir. 2003). The agency noted Asghar's "audibly agitated demeanor" when responding to questioning by government counsel. The trial transcript reflects multiple confrontations between Asghar and government counsel during cross examination that support the agency's conclusion. For example, responding to the government attorney's presentation of social media posts suggesting that Asghar may have made

Case 2:25-cv-00306-JRS-MJD   Document 10-1   Filed 08/01/25   Page 4 of 65 PageID #: 55

Asghar v. Garland, Not Reported in Fed. Rptr. (2023)

misleading statements about his visits to Russia, Asghar appears to grow increasingly frustrated.

**\*2** Under the "extremely deferential" substantial evidence standard, *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003), we are not "compelled to conclude" that the agency erred in its adverse credibility determination. 8 U.S.C. § 1252(b)(4)(B).

2. Asghar was not prejudiced by incompetent translation at his merits hearing in violation of his due process rights. While "[i]t is long-settled that a competent translation is fundamental to a full and fair hearing," *Perez-Lastor v. INS.*, 208 F.3d 773, 778 (9th Cir. 2000), to establish a due process violation based on incompetent translation, a petitioner must (1) provide evidence of mistranslation and (2) establish prejudice by demonstrating "that a better translation would have made a difference in the outcome of the hearing." *Acewicz v. INS.*, 984 F.2d 1056, 1063 (9th Cir. 1993) (citing *Tejeda-Mata v. INS*, 626 F.2d 721, 727 (9th Cir. 1980)).

3. Here, the trial transcript contains some evidence of mistranslation, including "direct evidence of incorrectly translated words, unresponsive answers by the witness, and the witness' [sic] expression of difficulty understanding what is said to him." *Siong v. INS.*, 376 F.3d 1030, 1041 (9th Cir. 2004). However, most of these errors were corrected through further questioning or requests for clarification. *See Kotasz v. INS.*, 31 F.3d 847, 850 n.2 (9th Cir. 1994) (stating that translation errors may be "rectified" through "[c]larification or repetition" at a petitioner's hearing).

Ultimately, Asghar was not prejudiced by instances of incompetent translation that remained unclarified. "When the BIA bases its denial of an asylum claim on an adverse credibility finding, as it did here, evidence that the translation caused the BIA to disbelieve the petitioner's testimony is sufficient to show prejudice." *Perez-Lastor*, 208 F.3d at 780 n.8. Here, the unclarified translation errors were relatively minor and did not outweigh the substantial evidence supporting the agency's adverse credibility finding. As such,

Asghar has not provided sufficient evidence that translation errors caused the agency to disbelieve his testimony, in light of voluminous, properly translated testimony supporting the agency's adverse credibility determination.

4. Substantial evidence supports the agency's conclusion that Asghar failed to carry his burden of proof, independent of his testimony, on his asylum, withholding, and CAT claims. *See Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022) ("[F]actual findings underlying the BIA's determination that a petitioner is not eligible for asylum, withholding of removal, or CAT relief" are reviewed for "substantial evidence."). The agency properly observed that the country conditions evidence in this case is mixed, and Asghar offers no further evidence in support of his protection claims. Asghar instead argues that the agency's cursory treatment of such evidence warrants remand, analogizing his case to *Davila v. Barr*, 968 F.3d 1136 (9th Cir. 2020), in which we remanded to the BIA based on its "selective[ ]" citation to country conditions evidence. *Id.* at 1143.

But here, the agency properly reviewed equivocal country conditions evidence in the record. While the country conditions reports suggest that Shia Muslims are targeted by the government and certain sectarian groups, the same reports note that the Pakistani government has attempted to tamp down such violence. Thus, substantial evidence supports the agency's conclusion that "the same evidence demonstrates that the Pakistani government protects Shias and inter-sectarian couples from harm, and actively combats sectarian violence and discrimination towards such groups."

**\*3** Asghar offers no other arguments to contest the agency's denial of asylum, withholding, and CAT protection. Accordingly, the agency's denial of relief was proper.

**PETITION DENIED.**

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 3814035

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**NO.**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

DHS ICE
DEC 09 2021
OPLA- San Diego, CA

ASGHAR, Mudasar

     *Petitioner,*

         v.

Merrick GARLAND, US Attorney General

     *Respondent.*

Case No.

Immigration File No.
A 203-681-527

---

### PETITION FOR REVIEW

Petitioner, Mudasar Asghar, ("Petitioner") hereby seeks review by this Court of the decision of the Board of Immigration Appeals ("BIA"), dated December 6th, 2021, dismissing his appeal of the Immigration Judge's denial of his motion to terminate and applications for waiver of inadmissibility and adjustment of status. A copy of the immigration judge and BIA decisions are attached.

1.   Venue is properly with this Court pursuant to 8 U.S.C. § 1252(b)(2) because the administrative proceedings before the Immigration Judge were conducted in San Francisco, California, within the jurisdiction of this judicial circuit.

2.    Jurisdiction to review the BIA's decision is asserted under 8 U.S.C. § 1252(a). This Court has jurisdiction over final orders of removal under 8 U.S.C. § 1252(a) and has jurisdiction to determine its own jurisdiction under 8 U.S.C. § 1252(a)(2)(C). *See Kucana v. Holder,* 558 U.S. 233, 242, 253 (2010); *Figueroa v. Mukasey*, 543 F.3d 487, 490, 493-94 (9th Cir. 2008). This Court also has jurisdiction to review "constitutional claims or question of law," notwithstanding any other provision of the INA. 8 U.S.C. § 1252(a)(2)(D), as enacted by the REAL ID Act of 2005, Title I, § 106(a)(1)(A)(iii), Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005); *Figueroa*, 543 F.3d at 494.

3.    This petition for review asserts that the BIA, *inter alia*, abused its discretion, erred as a matter of law, and deprived Petitioner of due process in denying Petitioner's appeal of the Immigration Judge's decision denying Petitioner's motion to terminate proceedings and applications for waiver of inadmissibility and adjustment of status.

4.    The validity of the Order herein complained of has not been upheld by any prior judicial proceeding.

5.    Petitioner is in the custody of the Department of Homeland Security. He has no other motions or applications for relief pending.

Dated:  December 6, 2021        Respectfully submitted,

Mudasar Asghar
5017 N Harding Ave Apt 2A
Chicago, IL, 60625
fatimanadeem264@gmail.com
(858)717-5238
A#203681527
*Petitioner, pro se*

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DHS ICE
DEC 09 2021
OPLA- San Diego, CA

_____

_____        )
                                     )
A# 203-681-527                       )
                                     )
              ASGHAR, Mudasar        )        Case No._____
                   Petitioner        )
                        v.           )
                                     )
     Merrick Garland,                )
     United States Attorney General  )
                                     )
              Respondent             )
_____        )

## PETITIONER'S MOTION FOR STAY OF REMOVAL PENDING CONSIDERATION OF PETITION FOR REVIEW AND MEMORANDUM OF LAW IN SUPPORT OF STAY OF REMOVAL

Petitioner, *pro se*, hereby moves this Court for an Order staying his removal from the United States pending a final decision by this Court on his Petition for Review. In support of this Motion, Petitioner states:

1.    Petitioner's administrative appeal to the Board of Immigration Appeals (BIA) was dismissed on 11/08/2021.

2.    Petitioner has timely filed a Petition for Review before this Court pursuant to 8 U.S.C. §1252(b)(1).

3.    Pursuant to *De Leon v. I.N.S.,* 115 F.3d 643, 644 (9th Cir. 1997), Petitioner requests that this Court grant a Temporary Stay of removal until the Court issues a final ruling on the stay motion.

4.    In *Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009), the U.S. Supreme Court held that a request for a stay of removal is governed by the traditional four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Of these factors, the Supreme Court found that the first two are the most critical. *Id.*

5.    The petitioner is a member of a particular social group as Sunni man in a mixed-sect marriage with a Shia wife. The couple faced extreme religious persecution against their mixed-sect marriage by the powerful Sunni organization, Ahle Sunnat wal Jamaat (ASWJ). ASWJ tortured, attacked and stalked the family physically as well as with threatening phone calls. The threats extended to any children who the couple might have in the future (they did not have children at the time of the attacks but now they have one and are expecting

another). Even when the couple fled their home to live with relatives, ASWJ followed them with continued intimidations and assaults. Mudasar sought help from the police but they outright refused because they were afraid of retaliation from the ASWJ. Mudasar's neighbors supported the ASWJ and their assaults on the family. His family were prejudiced against his wife and would not provide meaningful protection against ASWJ violence. Mudasar had to leave his job at his father's butcher shop where he had worked his whole life. Without any refuge, Mudasar and his wife were forced to flee for their lives. The petitioner and his family will be killed if they return to Pakistan.

6. Here, Petitioner is likely to succeed on the merits of his appeal he has credible and substantial evidence supporting his torture and political persecution including written and physical evidence.

7. Petitioner will be irreparably injured if not granted a stay. In considering irreparable injury, this Court has found that "important factors include separation from family members, medical needs, and potential economic hardship." *Andreiu v. Ashcroft*, 253 F.3d 477, 483 (9th Cir. 2001).

8. The denial of a stay would separate Petitioner from the following family members: the petitioner's pregnant wife, Fatima Nadeem, his daughter Haniya Mudasar (DOB 1/10/2020), and his soon-to-be-born

child.

9.  Petitioner would also be harmed by removal because he has serious health issues including Rhinosinusitis, prediabetes, high cholesterol, asthma, meniscal tear, numbness, and a history of strokes. The petitioner will receive knee surgery on December 10, 2021 for his meniscal tear and complex cleft type tear in his knee. The petitioner has suffered strokes and continues to have occipital pain, numbness on his right side, and weakness on the left side as a result of the strokes. The petitioner will receive another surgery for his hand after he completes his knee surgery.

10.  The petitioner would also be harmed by removal because of economic hardship. Mudasar will be the primary childcare provider for his daughter and soon-to-be-born child. His wife is looking for a job as she is the only family member eligible for a work authorization right now. Mudasar will be responsible for caring for his children while his wife works because they cannot afford daycare.

11.  Petitioner is seeking asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). This Court has recognized that:

12.  In asylum, withholding of removal and CAT cases, the claim on the merits is that the individual is in physical danger if returned to his or her home country. Consideration of the likelihood of such

treatment, determined apart from merits issues such as whether any
physical abuse would be on account of a protected ground for
asylum and withholding purposes, or whether the alien is barred
from relief as a criminal alien, should be part of the irreparable
harm inquiry.

13.   *Leiva-Perez v. Holder* at 969. Petitioner's claim is that he has
suffered torture, threats against his life and religious persecution as
a Sunni man in a mixed-sect marriage with a Shia woman. He is
certain that if he returns, he, his wife, his daughter, and his unborn
child will be killed.

14.   Furthermore, because Petitioner is applying for withholding or
deferral of removal; physical removal to Pakistan could arguably
render his case moot. See e.g. *Kaur v. Holder*, 561 F.3d 957 (9th
Circuit 2009) and *Blandino-Medina v. Holder,* 712 F.3d 1338, 1342
(9th Cir. 2013).

15.   Petitioner asks that this Court issue a Temporary Order granting a
Stay of Removal pursuant to *De Leon v. I.N.S.,* 115 F.3d 643 (1997)
while it is considering Petitioner's Motion for Stay. Petitioner also
requests that this Court grant his Motion for Stay for the duration of
his Petition for Review.

Dated: December 6, 2021

A# 203-681-527
Petitioner, *pro se*

ASGHAR, Mudasar

Address: 5017 N. Harding Ave
Apt 2A, Chicago, IL, 606

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DHS ICE
DEC 09 2021
OPLA- San Diego, CA

|  |  |  |
|---|---|---|
| _____ | ) | |
| _____ | ) | |
| A#203-681-527 | ) | |
| ASGHAR, Mudasar | ) | Case No._____ |
|  | ) | |
| v. | ) | |
|  | ) | |
| Merrick Garland, | ) | |
| United States Attorney General | ) | |
|  | ) | |
| Respondent | ) | |
| _____ | ) | |

## MOTION FOR APPOINTMENT OF PRO BONO COUNSEL

Petitioner, *pro se*, hereby moves this Court to appoint *pro bono* counsel for this Petition because the issues in this case are complex and the Petitioner is not able to adequately represent himself or brief the issues.

Respectfully submitted this 12/06/2021_____.

_____
A#203-681-527
Petitioner, *pro se*

ASGHAR, Mudasar

Address: 5017 N. Harding Ave
Apt 2A, Chicago, IL 60625

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DHS ICE
DEC 09 2021
San Diego, CA

## Form 4. Motion and Affidavit for Permission to Proceed in Forma Pauperis

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form04instructions.pdf*

**9th Cir. Case Number(s)**

**Case Name**  Mudasar Ashgar

**Affidavit in support of motion:** I swear under penalty of perjury that I am financially unable to pay the docket and filing fees for my appeal. I believe my appeal has merit. I swear under penalty of perjury under United States laws that my answers on this form are true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

**Signature**                         **Date** 12/7/21

The court may grant a motion to proceed in forma pauperis if you show that you cannot pay the filing fees **and** you have a non-frivolous legal issue on appeal. Please state your issues on appeal. (*attach additional pages if necessary*)

I am currently unemployed as, is my spouse. We have many expenses for our young daughter and are currently expecting another child. The only income we recieve at this time are Illinois state benefits and WIC benefits. Our rental payments and other expenses for my child make it necessary that this filing fee be waived in order for this appeal to move forward.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

*1. For both you and your spouse, estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| **Income Source** | **You** | **Spouse** | **You** | **Spouse** |
| Employment | $ 0 | $ 0 | $ 0 | $ 0 |
| Self-Employment | $ 0 | $ 0 | $ 0 | $ 0 |
| Income from real property (such as rental income) | $ 0 | $ 0 | $ 0 | $ 0 |
| Interest and Dividends | $ 0 | $ 0 | $ 0 | $ 0 |
| Gifts | $ 0 | $ 0 | $ 0 | $ 0 |
| Alimony | $ 0 | $ 0 | $ 0 | $ 0 |
| Child Support | $ 0 | $ 0 | $ 0 | $ 0 |
| Retirement (such as social security, pensions, annuities, insurance) | $ 0 | $ 0 | $ 0 | $ 0 |
| Disability (such as social security, insurance payments) | $ 0 | $ 0 | $ 0 | $ 0 |
| Unemployment Payments | $ 0 | $ 0 | $ 0 | $ 0 |
| Public-Assistance (such as welfare) | $ 700 | $ 569 | $ 700 | $ 569 |
| Other (specify) | $ 0 | $ 0 | $ 0 | $ 0 |
| **TOTAL MONTHLY INCOME:** | $ 700 | $ 569 | $ 700 | $ 569 |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 4**    2    *Rev. 12/01/2018*

*2. List your employment history for the past two years, most recent employer first.*
*(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of Employment | | Gross Monthly Pay |
|----------|---------|---------------------|--|-------------------|
| none | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |

*3. List your spouse's employment history for the past two years, most recent employer first.*
*(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of Employment | | Gross Monthly Pay |
|----------|---------|---------------------|--|-------------------|
| none | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |
| | | From | | $ |
| | | To | | |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

4. *How much cash do you and your spouse have?*    $ | 0 |

*Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount You Have | Amount Your Spouse Has |
|---|---|---|---|
| Huntington Bank | Checking | $ 23.55 | $ 0 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

***If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5. *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishing.*

| Home | Value | Other Real Estate | Value |
|---|---|---|---|
| none | $ | | $ |

| Motor Vehicle 1: Make & Year | Model | Registration # | Value |
|---|---|---|---|
| none | | | $ |
| **Motor Vehicle 2: Make & Year** | **Model** | **Registration #** | **Value** |
| none | | | $ |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 4**                    *4*                    *Rev. 12/01/2018*

| Other Assets | Value |
|---|---|
| none | $ |
| | $ |
| | $ |

6. State every person, business, or organization owing you or your spouse money, and the amount owed.

| Person owing you or your spouse | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| none | $ | $ |
| | $ | $ |
| | $ | $ |

7. State the persons who rely on you or your spouse for support. If a dependent is a minor, list only the initials and not the full name.

| Name | Relationship | Age |
|---|---|---|
| Haniya Sophia Mudasar | Daughter | 2 Years |
| | | |
| | | |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 4**                    5                    *Rev. 12/01/2018*

*8. Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

| | You | Spouse |
|---|---|---|
| Rent or home-mortgage payment (include lot rented for mobile home) | $ 900 | $ 0 |
| - Are real estate taxes included?    ◯ Yes    ◉ No<br>- Is property insurance included?    ◯ Yes    ◉ No | | |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ 64 | $ 0 |
| Home maintenance (repairs and upkeep) | $ 0 | $ 0 |
| Food | $ 300 | $ 0 |
| Clothing | $ 0 | $ 0 |
| Laundry and dry-cleaning | $ 20 | $ 0 |
| Medical and dental expenses | $ 0 | $ 0 |
| Transportation (not including motor vehicle payments) | $ 0 | $ 0 |
| Recreation, entertainment, newspapers, magazines, etc. | $ 0 | $ 0 |
| Insurance (not deducted from wages or included in mortgage payments) | | |
| - Homeowner's or renter's | $ 0 | $ 0 |
| - Life | $ 0 | $ 0 |
| - Health | $ 0 | $ 0 |
| - Motor Vehicle | $ 0 | $ 0 |
| - Other | $ 0 | $ 0 |
| Taxes (not deducted from wages or included in mortgage payments) | | |
| Specify | $ 0 | $ 0 |

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 4**                                    6                                    *Rev. 12/01/2018*

|  | You | Spouse |
|---|---|---|
| Installment payments |  |  |
|   - Motor Vehicle | $ 0 | $ 0 |
|   - Credit Card (name) | $ 0 | $ 0 |
|   - Department Store (name) | $ 0 | $ 0 |
| Alimony, maintenance, and support paid to others | $ 0 | $ 0 |
| Regular expenses for the operation of business, profession, or farm (attach detailed statement) | $ 0 | $ 0 |
| Other (specify) | $ 0 | $ 0 |
| **TOTAL MONTHLY EXPENSES** | $ 1284 | $ 0 |

9. *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*  ☐ Yes  ☒ No

    If Yes, describe on an attached sheet.

10. *Have you spent—or will you be spending—any money for expenses or attorney fees in connection with this lawsuit?*  ☐ Yes  ☒ No

    If Yes, how much? $ _____

11. *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

Both my spouse and I are unemployed at this time. We make rental payments every month for our apartment and we also have many expenses for our young daugther's living expenses. We also expect another child in the coming months. Please waive this application fee based on the reasons listed above.

12. *State the city and state of your legal residence.*

City  Chicago      State  IL

Your daytime phone number (ex., 415-355-8000)  858-899-7766

Your age  38      Your years of schooling  9 years

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 4**      7      *Rev. 12/01/2018*

## <u>PROOF OF SERVICE BY MAIL</u>



I, Mudasar Asghar, the undersigned, say:

I am over the age of eighteen years and not a party to the within action or

proceedings; my address is 5017 N Harding Ave Apt 2A Chicago, IL, 60625.

On December 6, 2021, I caused to be served the within:

(1) **Petition for Review**
(2) **Motion and Affidavit for Permission to Proceed in Forma Pauperis**
(3) **Motion for Appointment of Pro Bono Counsel**
(4) **Petitioner's Motion for Stay of Removal Pending Consideration of Petition for Review and Memorandum of Law In Support of Stay of Removal**

on the opposing counsel and the Department of Homeland Security by depositing

one copy thereof, enclosed in a sealed envelope with postage fully pre-paid, in a

mailbox regularly maintained by the United States Postal Service addressed as

follows:

> Office of the Clerk
> James R.
> Browning Courthouse
> U.S. Court of Appeals
> 95 Seventh Street
> San Francisco, California 94103-1526

> Office of the Clerk
> James R.
> Browning Courthouse
> U.S. Court of Appeals
> P.O. Box 193939
> San Francisco, California 94111-3939
> Office of the Principal Legal Advisor, San Diego

880 Front Street, Suite 2246
San Diego, CA 92101

William C. Peachey
Director
Office of Immigration Litigation
Department of Justice/Civil Division
Post Office Box 878, Ben Franklin Station
Washington, DC 20044

I emailed 9th Circuit as permitted as a temporary provision during COVID for Pro Se petitioners prose_pleadings@ca9.uscourts.gov.

I also emailed The Office of the Principal Legal Advisor, San Diego underwhose jurisdiction I was previously detained sandiego.outreach@ice.dhs.gov.

Executed on December 6, 2021, at Chicago, IL. I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.

Mudasar Asghar
Declarant



# U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



ZELCER, SARAH H.
CENTRAL AMERICAN RESOURCE CE
468 WEST 5TH ST. STE 204
SAN BERNARDINO CA 92401

DHS/ICE - OFFICE OF CHIEF COUNSEL
10400 RANCHO ROAD
ADELANTO CA 92301

Name: ASGHAR, MUDASAR                    A 203-681-527

Date of this Notice:    11/8/2021

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:                          Userteam: Docket
Baird, Michael P.





**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

ASGHAR, MUDASAR
A 203681527
5017 NORTH HARDING  AVENUE
APT 2
CHICAGO IL 60625

DHS/ICE - OFFICE OF CHIEF COUNSEL
10400 RANCHO ROAD
ADELANTO CA 92301

Name: ASGHAR, MUDASAR

A 203-681-527

Date of this Notice:    11/8/2021

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Baird, Michael P.

Userteam: Docket

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

---

MATTER OF:

Mudasar ASGHAR, A203-681-527

Respondent

**FILED**

Nov 08, 2021

---

ON BEHALF OF RESPONDENT: Sarah H. Zelcer, Esquire

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, Adelanto, CA

Before: Baird, Appellate Immigration Judge

Opinion by Appellate Immigration Judge Baird

BAIRD, Appellate Immigration Judge

The respondent, a native and citizen of Pakistan, appeals the Immigration Judge's February 23, 2021, decision denying his application for asylum and withholding of removal, as well as his request for protection under the regulations for the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994) (CAT). *See* sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231(b)(3); 8 C.F.R. §§ 1208.13, 1208.16.-18. The Department of Homeland Security (DHS) has not filed a response to the appeal. The appeal will be dismissed.

We review the findings of fact made by the Immigration Judge, including the determination of credibility, for clear error. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including questions of judgment, discretion, and law, de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

The respondent argues that he suffered past persecution and fears future persecution by the Sunni Muslim community because he, a Sunni Muslim, married his spouse, who is a Shiite Muslim in 2019 (IJ at 4-5; Tr. at 97). The respondent testified that his marriage was arranged by his mother and that he and his family were not aware that his wife was a Shiite before they got married (Tr. at 98-101). After his mother and the Sunni neighborhood found out that his wife was a Shiite, the respondent and his wife were forced to leave the Sunni community. When they refused, the respondent started receiving threats from Ahle Sunnat Jammat members (Tr. at 120, 126). In May and June 2019, he and his wife were attacked by several people in his neighborhood and they sustained injuries. He stated that he obtained a court order directing the police to investigate the attacks, which he presented to the police, but they refused to help him (IJ at 5; Tr. at 108-14, 125-131; Exh. 3 at Tab A, p. 15-16; Exh. 3 at Tab C). The Immigration Judge found that the respondent and his wife were not credible and that he did not provide sufficient corroborating evidence to rehabilitate his incredible testimony or to independently establish

A203-681-527

eligibility for asylum or withholding of removal (IJ at 4-10). The Immigration Judge also denied the respondent's request for protection under the CAT (IJ at 10-11). This appeal followed.

As an initial matter, the respondent avers that he was deprived of a full and fair hearing because the Immigration Judge did not allow the respondent's wife to testify on direct examination and that the quality of the interpreting services during the hearing was poor (Respondent's Br. at 22-23). First, the transcript reflects that it was the respondent's trial counsel who decided that since the declaration of the respondent's wife had been admitted into evidence, she would reserve her questions for re-direct (Tr. at 339). The respondent has not asserted a claim of ineffective assistance of counsel against his prior attorney. Second, upon our review of the record, we find that the respondent's counsel had the opportunity to ask the respondent's wife follow up questions after the cross-examination, and the testimony of the respondent's wife was sufficiently thorough to obtain the necessary details regarding the respondent's claim (Tr. at 359-388). Although there were some issues with the interpreter's microphone, which was adjusted to improve audio, the respondent has not identified any specific errors in interpretation (Tr. at 90). He does not allege that the translation was inaccurate in any way, nor has he explained how any issue with the interpretation impacted the Immigration Judge's adverse credibility determination (Tr. at 84). The respondent has not shown that he suffered any prejudice from the alleged due process violation. *See Zetino v. Holder*, 622 F.3d 1007, 1013 (9th Cir. 2010) (explaining that a respondent must show prejudice to establish a due process violation); *Aden v. Holder*, 589 F.3d 1040,1047 (9th Cir. 2009) ("To establish a due process violation, a petitioner must show that defects in translation prejudiced the outcome of the hearing."). Therefore, we discern no due process violation in the proceedings below.

We adopt and affirm the Immigration Judge's decision denying the respondent's applications for relief for the reasons stated therein. *See Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994).[1] Contrary to the respondent's contentions on appeal, the Immigration Judge's adverse credibility finding, which was based on inconsistencies between the respondent's testimony and other evidence of the record, implausibilities in the testimony of the respondent and his wife, and assessment of the respondent's demeanor, is not clearly erroneous (IJ at 3-8; Exhs. 3, 7; Respondent's Br. at 4). The record reflects that the Immigration Judge considered the totality of circumstances, and offered specific, cogent reasons for finding that the respondent did not testify credibly, and that he has not shown on appeal that the Immigration Judge's factual findings "are illogical or implausible, or without support in inferences that may be drawn from the facts in the record." *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

---

[1] We do not rely on the lack of corroboration findings by the Immigration Judge (IJ at 8-9). We agree with the respondent that the blanket instruction on the pre-hearing order, which is a check-box style form, might not satisfy the Ninth Circuit requirement that the Immigration Judge must give the applicant notice of the corroboration that is required. *See Ren v. Holder*, 648 F.3d 1079, 1093 (9th Cir. 2011) (Respondent's Br. at 17-19). We leave that question to answer another day.

A203-681-527

We discern no clear error in the Immigration Judge's findings that the respondent offered inconsistent evidence regarding the material aspects of his claim (IJ at 4-8). *See* section 208(b)(1)(B)(iii) of the Act; *see also Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010). For example, the respondent stated during the credible fear interview that he made the decision to leave Pakistan after he was attacked in June 2019. When asked whether he ever thought about leaving Pakistan before this incident, he replied that he did not (IJ at 4; Exh. 7, Tab A, p. 25-26). However, later in the credible fear interview and during the cross-examination, the respondent stated that he first talked to the travel agent on the phone in May 2019 about the possibility of leaving Pakistan, although he did not physically meet with him until June 2019 (IJ at 4; Tr. 161, 252, 338; Exh. 7 at Tab A, p. 26). The record does not support the respondent's assertion that he was never given an opportunity to explain this difference (*compare* Respondent's Br. at 5 *with* Tr. at 250, 252, 254). The respondent's testimony that he was a Sunni and his wife was a Shiite was inconsistent with his asylum application where he stated that he and his wife were harmed "due to changing our sect from Sunni and Shia to Ahle-Tashi" (according to the respondent's testimony, Ahle-Tashi is synonymous with Shiite in Pakistan) (IJ at 5; Tr. at 94, 227, 337-38; Exh. 3 at Tab A, p. 15-16; Exh. 3 at Tab O, p. 109; Respondent's Br. at 8-9). The Immigration Judge did not find the respondent's explanations for these inconsistencies to be satisfactory (IJ at 4-5). *See Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) (if the Immigration Judge reasonably rejects the respondent's explanation, the Immigration Judge may properly rely on the inconsistency as support for an adverse credibility determination).

Further, the Immigration Judge properly determined that these inconsistencies were material because they concerned material aspects of the respondent's claim relating to the timing of his decision to leave Pakistan and the motive of the respondent's persecutors to harm him (IJ at 4-5). *See Rodriguez-Ramirez v. Garland*, 11 F.4th 1091, 1093 (9th Cir. 2021) (recognizing that "an [Immigration Judge] may rely upon an inconsistency in a 'crucial date' concerning 'the very event upon which [a petitioner] predicated his claim for asylum.'"); *see also Zamanov v. Holder*, 649 F.3d 969, 973 (9th Cir. 2011) (holding that "[t]estimony about the events leading up to the petitioner's departure, or about the circumstances that led to the persecution, go to the 'heart of the claim.'").

We also discern no clear error in the Immigration Judge's finding that it is implausible as a matter of common sense that the respondent did not realize that he could report the June 2019, attack to the police and that he did not know that he could obtain a visa to travel to the United States since he traveled extensively to many countries (IJ at 6; Tr. at 123-24, 185-86, 279-80; Exh. 3 at Tab R, p. 124). Although the respondent argues on appeal that the Immigration Judge's finding was based on speculation or conjecture, we affirm the Immigration Judge's reliance on the implausibility of the respondent's statements in his adverse credibility determination (Respondent's Br. at 10). *See Wang v. Sessions*, 861 F.3d 1003, 1008 (9th Cir. 2017) (noting that an Immigration Judge may base a credibility finding on "the inherent plausibility" of a respondent's account); *see also Jibril v. Gonzales*, 423 F.3d 1129, 1135 (9th Cir. 2005) (providing that to determine the plausibility of a claim, the Immigration Judge is permitted to apply common sense when reviewing testimony and record evidence).

3

A203-681-527

The Immigration Judge also determined that the respondent's combative demeanor during cross-examination undermined his credibility (IJ at 7-8; Tr. at 195-226). On appeal, the respondent alleges that the Immigration Judge did not take into account that the respondent acted with emotion because the DHS was implying that he was a liar (Respondent's Br. at 10). While we acknowledge the respondent's arguments, we defer to an Immigration Judge's demeanor finding, and under the totality of circumstances, we discern no reason not to do so here. *See Rodriguez-Ramirez v. Garland*, 11 F.4th at 1093 (reiterating that "the [Immigration Judge] is in the best position to consider a petitioner's demeanor, candor, and responsiveness"); *see also Matter of A-S-*, 21 I&N Dec. 1106, 1111 (BIA 1998) (holding that an Immigration Judge is uniquely positioned to assess the demeanor of a witness).

The respondent had a meaningful opportunity to address the inconsistencies and implausibilities in the record during his hearing, and he has addressed them on appeal (IJ at 4). *See generally Matter of Y-I-M-*, 27 I&N Dec. 724, 727-28 (BIA 2019) (holding that asylum applicants have a duty to proffer explanations for inconsistencies that are apparent in the record), *see Matter of D-R-*, 25 I&N Dec. 445, 454-55 (BIA 2011) (observing that an Immigration Judge may make reasonable inferences from direct and circumstantial evidence in the record and is not required to accept a respondent's account where other plausible views of the evidence are supported by the record), *remanded on other grounds, Radojkovic v. Holder*, 599 F. App'x 646, 648 (9th Cir. 2015). We have considered the respondent's explanations on appeal and do not find them to be persuasive or to adequately reconcile the inconsistencies or to overcome the Immigration Judge's concerns (Respondent's Br. at 4-17). The respondent bears the burden to establish his claim before the Immigration Judge, and he has not satisfactorily explained the evidentiary anomalies. *See* section 240(c)(4)(A) of the Act, 8 U.S.C. § 1229a(c)(4)(A).

Contrary to the respondent's arguments on appeal, the Immigration Judge considered the totality of circumstances, and found, without clear error, that the respondent's wife was also not credible based on inconsistencies between the respondent's and his wife's testimony regarding the date of the wedding when they purportedly met, whether it was the housemaid or the respondent's mother, who allegedly told the neighbors that his wife is a Shiite, and whether the respondent and his wife traveled with other Pakistanis from Peru to the United States (IJ at 5-6; Tr. at 380-81; Respondent's Br. at 12-14). *Shrestha v. Holder*, 590 F.3d at 1044 (stating that when viewed in the totality of the circumstances, the Immigration Judge may consider any nontrivial, relevant factor that reasonably bears on the witness's veracity). The Immigration Judge also properly considered the lack of detail and implausibilities in Fatima's testimony regarding her relationship with her biological mother, her biological mother's awareness of her Shiite upbringing, and her communication with the respondent's family after she left Pakistan with the respondent (IJ at 7). *See Bingxu Jin v. Holder*, 748 F.3d 959, 966-67 (9th Cir. 2014) (a "lack of detail in an alien's testimony may be one factor in evaluating credibility); *Lalayan v. Garland*, 4 F.4th 822, 836 (9th Cir. 2021) ("Just as a witness's explanation might clarify an issue, his or her failure to provide a persuasive explanation . . . can serve as the basis of an implausibility finding." (citations omitted)).

Having considered the respondent's appellate arguments, we conclude that the Immigration Judge properly considered the totality of the circumstances, and we agree that the inconsistencies,

4

A203-681-527

implausibilities and assessment of the respondent's demeanor cited are an adequate basis for the
adverse credibility finding. *See* section 208(b)(1)(B)(iii) of the Act; *see also Matter of J-Y-C-*,
24 I&N Dec. 260 (BIA 2007) (discussing credibility standard under the REAL ID Act). In the
absence of credible testimony, and since no other corroborating evidence independently
establishes the respondent's eligibility for asylum or withholding of removal, it follows that the
respondent did not meet his burden of proof for such relief (IJ at 8-10). *See* 8 C.F.R. §§ 1208.13(a),
1208.16(b); *Matter of M-S-*, 21 I&N Dec. 125, 129 (BIA 1995) (persecution claim that lacks
veracity cannot satisfy burdens of proof necessary to establish eligibility for asylum and
withholding of removal).

We also adopt and affirm the Immigration Judge's determination that the country conditions
evidence submitted by the respondent does not independently carry his burden of proof, absent
credible testimony, that he has a well-founded fear of future harm by the Pakistani government or
by forces that the Pakistani government is unable or unwilling to control (IJ at 9-10). We are
unpersuaded by the respondent's appellate arguments challenging this portion of the Immigration
Judge's decision (Respondent's Br. at 20-22). The Immigration Judge properly considered the
extensive country conditions evidence, as well as the testimony and the report of the respondent's
expert, which reflect that Pakistani authorities are trying to combat the armed sectarian groups that
target Shiites, albeit with mixed effectiveness (IJ at 9; Exh. 3 at Tab R, p. 142, 168, 176-77;
Exh. 8 at Tab GG, p. 430-31). Although Pakistani authorities are having some difficulty
controlling violence against Shiites, it does not follow that they would be unable or unwilling to
protect the respondent. *See Hussain v. Rosen*, 985 F.3d 634, 648 (9th Cir. 2021) (holding that "the
standard is not that the government can prevent *all* risk of harm" . . . "a country's government is
not "unable or unwilling" to control violent nonstate actors when it demonstrates efforts to subdue
said groups.") (citations omitted). In light of the mixed evidence of country conditions, we cannot
conclude that the Immigration Judge's findings are clearly erroneous. *See Cooper v. Harris*,
137 S. Ct. 1455, 1465 (2017) (stating that under review for clear error, a "finding that is 'plausible'
in light of the full record - even if another is equally or more so - must govern"). Therefore, we
discern no reason to disturb the Immigration Judge's decision denying the respondent's
applications for asylum and withholding of removal under the Act, independent of the respondent's
adverse credibility.

Finally, we affirm the Immigration Judge's decision to deny the respondent's request for
protection under the CAT. 8 C.F.R §§ 1208.16(c), 1208.18(a). This claim is based on the same
facts that the Immigration Judge found not credible for the respondent's asylum and withholding
of removal claims. The respondent has not established, independent of his own incredible
testimony, that he would more likely than not be tortured by or at the instigation of or with the
consent or acquiescence of a public official or other person acting in an official capacity, upon
removal to Pakistan, even considering country conditions (IJ at 10-11). *See Shrestha v. Holder*,
590 F.3d at 1048-49; *Farah v. Ashcroft*, 348 F.3d at 1156-57 (upholding a denial of request for
protection under the [CAT] where the petitioner failed to identify additional probative evidence
outside of previously rejected asylum application to support torture claim); *see also*
*Zheng v. Ashcroft*, 332 F.3d 1186, 1194-95 (9th Cir. 2003) (defining acquiescence as willful
blindness). Moreover, the respondent has not set forth any specific appellate argument that the

5

A203-681-527

record evidence independent of his non-credible testimony was sufficient for him to meet his burden to establish protection under the CAT.

Accordingly, the following order will be entered.

ORDER: The respondent's appeal is dismissed.

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**ADELANTO, CALIFORNIA**

File Number:     **A 203-681-527**          **DETAINED**

In the Matter of:

        **ASGHAR,**          **IN REMOVAL PROCEEDINGS**
        **Mudasar,**

Respondent.

---

**CHARGES:**     Immigration and Nationality Act (INA) section 212(a)(6)(A)(i)—*alien present without admission or parole after inspection*

                INA section 212(a)(7)(A)(i)(I)—*alien not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document at the time of application for admission*

**APPLICATIONS:**     (1) Asylum under INA section 208;
                (2) Withholding of Removal under INA section 241(b)(3); and
                (3) Protection under Article III of the United Nations Convention Against Torture (CAT)

**ON BEHALF OF RESPONDENT:**          **ON BEHALF OF THE DEPARTMENT:**
Sahreen Manzar, Esquire          Matthew McMahon, Assistant Chief Counsel
Crimmigration, Inc.          U.S. Department of Homeland Security
2921 Fullerton Avenue          10250 Rancho Road
Sacramento, California 95812          Adelanto, California 92301

## DECISION AND ORDERS OF THE IMMIGRATION JUDGE

### I.     Procedural History

Mudasar Asghar (Respondent) is a native and citizen of Pakistan. *See* Exh. 1 at 1. On March 2, 2020, the U.S. Department of Homeland Security (Department) personally served Respondent with a Notice to Appear (NTA). *Id.* Therein, the Department alleged the following: (1) Respondent is not a citizen or national of the United States; (2) he is a native and citizen of Pakistan; (3) he arrived in the United States at or near Calexico, California, on or about December 29, 2019; (4) he is an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document; and (5) he was not then admitted or paroled after inspection by an immigration officer. *Id.* Based on these factual allegations, the

Department charged Respondent as inadmissible pursuant to INA section 212(a)(6)(A)(i), as an alien present without admission or parole after inspection, and INA section 212(a)(7)(A)(i)(I), as an alien not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document at the time of application for admission. *Id.* On March 2, 2020, jurisdiction vested and removal proceedings commenced when the Department filed the NTA with the Court. *See* 8 C.F.R. § 1003.14(a) (2020); Exh. 1 at 1.

On March 27, 2020, Respondent appeared with counsel before the Court and admitted all five factual allegations and conceded both charges of inadmissibility. *See* Exh. 1 at 1. Based upon Respondent's admissions and concessions, the Court found the Department met its burden of establishing by clear and convincing evidence that Respondent is subject to removal from the United States. Based on the Department's recommendation, the Court directed Pakistan as the country of removal.

On October 5, 2020, Respondent filed an amended Form I-589, Application for Asylum and for Withholding of Removal (Form I-589).[1] *See* Exh. 3, Tab A. On January 7, 2021, January 13, 2021, and January 21, 2021, Respondent appeared with counsel for merits hearings and presented testimony in support of his applications for relief.[2] At a January 28, 2021, merits hearing, Respondent's expert—upon whom the Department declined to conduct *voir dire*—and Respondent's wife presented testimony. The Court closed the record at the conclusion of the January 28, 2021, merits hearing.

For the following reasons, the Court will deny Respondent's applications for relief.

## II.    Law, Findings of Fact, and Analysis

*The evidence in this case consists of testimony by Respondent, his wife, and his expert, and the documentary evidence submitted by both parties.[3]  The Court has carefully considered all of the evidence even if not specifically referenced in this decision.*

---

[1] Although Respondent previously submitted a Form I-589 on August 31, 2020—*see* Exhibit 2— he stated his intent to move forward with the amended Form I-589 he submitted on October 5, 2020, as contained in Exhibit 3, Tab A.

[2] Prior to January 7, 2021, the matter was transferred to the undersigned Immigration Judge. In accordance with the applicable regulation, the undersigned Immigration Judge familiarized himself with the record of proceeding prior to the January 7, 2021, merits hearing. *See* 8 C.F.R. § 1240.1(b) (2020).

[3] The Department objected to admission of Respondent's submissions contained in Exhibit 3, Tabs F through M, O, and Q; Exhibit 6, Tabs S through DD; all of Exhibit 9; and all of Exhibit 10. Specifically, the Department argued that these submissions were not authenticated and were likely fraudulent. *See also* Exh. 4. Respondent objected to admission of the Department's submissions contained in Exhibit 7, Tabs C and E. Specifically, Respondent argued that that these submissions were not relevant and did not pertain specifically to Respondent. The Court held the objected submissions in abeyance to allow to the parties to lay a foundation for their admission during testimony. At the merits hearing on January 21, 2021, the Court found that the parties laid sufficient foundation for the objected submissions, admitted all of the objected submissions into the record, and will afford them the appropriate weight. In so finding, the Court notes that removal proceedings are not bound by the strict rules of evidence that apply in other courts. *Baliza v. INS*, 702 F.2d 1231 (9th Cir. 1983).

## A.    Respondent's Motion to Oppose Evidence

On February 8, 2020, the Department submitted a closing brief which included two tabs of impeachment evidence. *See* Dep't's Closing Br., Tabs A–B (Feb. 8, 2020). Subsequently, on February 12, 2020, Respondent submitted a motion opposing the evidence contained in Tabs A and B of the Department's closing brief. *See* Resp't's Mot. to Oppose Evidence (Feb. 12, 2020). The Court closed the evidentiary record at the conclusion of the last merits hearing on January 28, 2020. Thus, the Court agrees with Respondent and finds that the evidence submitted with the Department's closing brief should not be admitted because it is untimely, and because Respondent never had opportunity to examine or address it.

Accordingly, the Court grants Respondent's motion to oppose. Therefore, Tabs A and B of the Department's closing brief are not admitted as evidence, and Court did not consider their contents in evaluating Respondent's credibility or applications for relief.

## B.    Credibility and Corroboration

Respondent's applications are subject to the credibility provisions of the REAL ID Act. *See Matter of S-B-*, 24 I&N Dec. 42, 43 (BIA 2006). The Court may base a credibility determination on the demeanor, candor, or responsiveness of the respondent, the inherent plausibility of the respondent's account, the consistency between the respondent's written and oral statements, the internal consistency of each such statement, the consistency of such statements with other evidence of record, and any inaccuracies or falsehoods in such statements, or any other relevant factor. *See* INA §§ 208(b)(1)(B)(iii), 240(c)(4)(C); *see also Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010) (explaining the REAL ID Act standards for credibility determinations).

In *Shrestha*, the United Stated Court of Appeals for the Ninth Circuit (Ninth Circuit) noted that "it is plain from the REAL ID Act's terms that an adverse credibility determination must be made after considering the totality of circumstances, and all relevant factors." *Shrestha,* 590 F.3d at 1040 (internal quotations and citation omitted). The Ninth Circuit further noted that while the REAL ID Act provides a list of factors that may be considered when determining credibility, the "list is not exhaustive because the trier of fact may also consider any other relevant factor." *Id.* (internal quotation and citation omitted).

Further, an immigration judge (IJ) may make a credibility determination without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the respondent's claim. *See* INA § 208(b)(1)(B)(iii); *Malkandi v. Holder*, 576 F.3d 906, 916 (9th Cir. 2009); *Matter of Y-I-M-*, 27 I&N Dec. 724 (BIA 2019). The REAL ID Act "imports a 'rule of reason' into the assessment," as credibility determinations must "be reasonable and take into consideration the individual circumstances of the [respondent]." *Shrestha*, 590 F.3d at 1041 (quoting *Lin v. Mukasey*, 521 F.3d 22, 28 n.3 (1st Cir. 2008)). Where testimony alone is insufficient, the Court may require corroborating evidence to support the respondent's claim. *Wang v. Sessions*, 861 F.3d 1003, 1009 (9th Cir. 2017).

Here, under the totality of the circumstances, the Court finds that neither Respondent nor his wife were credible witnesses. The Court bases this determination, as discussed in more detail

3

below, on the inconsistencies in Respondent's and his wife's testimony, the implausibility of some of their claims, and Respondent's demeanor during some of his testimony. Indeed, while "the normal limits of human understanding and memory may make some inconsistencies or lack of recall present in any witness' case," the problems in this case exceed those limits. *Shrestha,* 590 F.3d at 1044–45. Moreover, when asked for additional information, Respondent and his wife provided unpersuasive explanations for the inconsistencies and implausibilities in their testimony. The Court finds that the issues with their credibility are material and, taken cumulatively, substantial, as they relate directly to the facts and circumstances of their life in Pakistan, their travel to the United States, and Respondent's fear of returning to Pakistan.

### 1.    Inconsistencies

The Court may rely upon inconsistencies between the respondent's testimony and other evidence of record, including the respondent's previous testimony. *See* INA §§ 208(b)(1)(B)(iii), 240(c)(4)(C); *Matter of Y-I-M-,* 27 I&N Dec. at 730. Further, the Court must provide the respondent with a "reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum." *Campos-Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir. 1999). In this case, there were multiple inconsistencies relating to the testimony of both Respondent and his wife.

The Court will first address inconsistencies in Respondent's testimony. To begin, during his credible fear interview, Respondent stated that he never thought of departing Pakistan until he was attacked on June 12, 2019. *See* Exh. 7, Tab A at 26. However, during the credible fear interview, and on cross-examination, Respondent stated that he met with his travel agent regarding the possibility of departing Pakistan on May 1, 2019. *See id.* at 27. This inconsistency is significant because it directly relates to Respondent's decision to depart Pakistan, in addition to his timing thereof. *See Zamanov v. Holder,* 649 F.3d 969, 973 (9th Cir. 2011) ("[t]estimony about the events leading up to the petitioner's departure go to the 'heart of the claim.'"); *Goel v. Gonzales,* 490 F.3d 735, 739 (9th Cir. 2007) (concluding that inconsistencies between testimony and documentary evidence support an adverse credibility finding where inconsistencies go to the heart of the claim); *see also Shrestha,* 590 F.3d at 1046–47 (recognizing that while "inconsistencies no longer need to go to the heart" of the claim, when they do "it doubtless is of great weight"). When confronted with this inconsistency, Respondent explained that while he did speak with his travel agent before June 12, 2019, they did not speak in-person until after June 12, 2019. However, Respondent's explanation does not address this inconsistency, much less convince the Court that this inconsistency is trivial or inconsequential. Indeed, Respondent's lack of a coherent explanation suggests that he either testified to dates he could not accurately recall, or that he contemplated departing Pakistan for reasons unrelated to his fear of return to that country. *See, e.g., Matter of Y-I-M-,* 27 I&N Dec. at 726 (stating that the Court "is not required to adopt a respondent's explanation if there are other permissible views of the evidence based upon the record" (internal citations omitted)).

Relatedly, during his credible fear interview, Respondent stated that the only times he left Pakistan were in 2017 and 2018. *See* Exh. 7, Tab A at 13. Further, Respondent testified that he has worked at his father's butcher shop in Pakistan since 2003, and that he was never employed elsewhere. However, on cross-examination, Respondent admitted that he lived in Russia for

several months from 2012 through 2013, where he was employed at a cafe. Although these inconsistencies regarding Respondent's employment history and travel outside Pakistan do not directly relate to his fear of returning to Pakistan, they are significant because they bear directly upon his credibility as a witness. *See Yan Liu v. Holder*, 640 F.3d 918, 925–26 (9th Cir. 2011) (relying on differences between an airport interview and subsequent elaboration to support an adverse credibility determination); *see also Shrestha*, 590 F.3d at 1046 (recognizing that "inconsistencies no longer need to go to the heart" of the claim). When confronted with these inconsistencies, Respondent explained that the interpreter did not accurately interpret his testimony during his credible fear interview. Nonetheless, the Court is not persuaded by Respondent's explanation, because Respondent confirmed that his testimony during his credible fear interview was otherwise correct, the same interpreter was used throughout the interview, and the Court has no other reason to question the accuracy of the interview records. *See* Exh. 7, Tab A at 1, 28–29; *see also Matter of J-C-H-F-*, 27 I&N Dec. 211, 212 (BIA 2018) ("[g]enerally, there is a presumption of reliability of Government documents." (quoting *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995)).

Moreover, although Respondent testified that he remains Sunni, he stated in his Form I-589 that he and his wife "faced persecution and beating [sic] due to changing our sect from Sunni and Shia to Ahle-Tashi."[4] Exh. 3, Tab A at 15, 19; *see also* Exh. 3, Tab O at 109 ("[four] unknown persons severe[ly] beat[] me and my wife due to change the sect [sic] Sunni to Ahle Tesshi"). This inconsistency is significant because it relates to the reason that Respondent's persecutors seek to harm him. *See Goel*, 490 F.3d at 739 (concluding that inconsistencies between testimony and documentary evidence support an adverse credibility finding where inconsistencies go to the heart of the claim); *Don v. Gonzales*, 476 F.3d 738, 741–43 (9th Cir. 2007) (concluding that inconsistencies regarding the reason the petitioner's persecutors sought to harm him go to the heart of the claim and are not trivial); *see also Shrestha*, 590 F.3d at 1046–47 (recognizing that while "inconsistencies no longer need to go to the heart" of the claim, when they do "it doubtless is of great weight"). The Court considered Respondent's explanation for this inconsistency. However, the Court finds the explanation to be insufficient to overcome the inconsistency because the conflicting statements were not ambiguous or equivocal or misspeak given offhand. In particular, the statement in the Form I-589 was written and should have aligned with Respondent's explanation for the inconsistency, but did not. *See Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) (noting that the IJ does not have "to engage in multiple iterations of the opportunity to explain. Once the IJ has provided a specific, cogent reason for disbelieving the alien's rationalization, the IJ need not offer the alien another opportunity to address the IJ's concerns").

Next, the Court addresses inconsistencies in Respondent's wife's testimony. To begin, Respondent's wife testified on cross-examination that she and Respondent first met at a wedding in November 2018, while Respondent testified that the wedding occurred in January 2019. Similarly, Respondent's wife testified that their housemaid told their neighbors that she is Shiite, *see also* Exhibit 3, Tab D at 73, while Respondent testified that his mother told the neighbors that his wife is Shiite. These inconsistencies are significant because they directly relate to the events leading up to their departure from Pakistan. *See Zamanov*, 649 F.3d at 973 ("[t]estimony about the events leading up to the petitioner's departure go to the 'heart of the claim.'"); *see also Shrestha*, 590 F.3d at 1046–47 (recognizing that while "inconsistencies no longer need to go to

---

[4] Respondent later testified on cross-examination that "Shiite" and "Ahle-Tashi" are synonymous in Pakistan.

the heart" of the claim, when they do "it doubtless is of great weight"). Neither Respondent nor his wife explained these inconsistencies, even though they had opportunity to do so.

Additionally, Respondent testified on cross-examination that he and his wife were arrested at a bus stop in Peru on their way to the United States. He further testified that he and his wife were taken to a police station, where they were joined by a group of four Pakistani sisters in the same room, and that they continued to travel with the four sisters on a bus after they were released from police custody. However, on cross-examination, Respondent's wife testified she did not know whether there were any Pakistanis arrested with them that day, nor did she recall any details regarding four Pakistani sisters at the police station that day or at any time thereafter. Although this inconsistency does not directly relate to Respondent's fear of returning to Pakistan, it is significant because Respondent was able to recall these events and individuals from their travel to the United States, while his wife was unable to recall the same. *See Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185–86 (9th Cir. 2016) (noting that adverse credibility determinations may be supported by omissions that are not merely "details"); *see also Shrestha*, 590 F.3d at 1046 (recognizing that "inconsistencies no longer need to go to the heart" of the claim). Again, neither Respondent nor his wife explained this inconsistency.

In sum, given the entirety of this record, the Court finds the inconsistencies in Respondent's and his wife's testimony to be one factor supporting an adverse credibility finding for both individuals. *Ren v. Holder*, 648 F.3d 1079, 1089 (9th Cir. 2011).

## 2. Implausibilities

The Court may also consider the plausibility of the respondent's account in assessing his credibility. INA §§ 208(b)(1)(B)(iii), 240(c)(4)(C); *Singh v. Lynch*, 802 F.3d 972, 976 (9th Cir. 2015) (holding that testimony that is implausible in light of background evidence may support an adverse credibility determination); *Jibril v. Gonzales*, 423 F.3d 1129, 1135 (9th Cir. 2005) (permitting the Court to exercise "common sense in rejecting" the respondent's testimony). In this case, key portions of both Respondent's and his wife's testimony are implausible.

To begin, Respondent made multiple implausible statements during his testimony. For instance, Respondent testified that after he and his wife were attacked on May 3, 2019, he obtained a civil writ from a court before he approached the police. Respondent explained that he was at first unaware he could report the incident to the police, which the Court finds to be implausible as a matter of common sense. *See Jibril*, 423 F.3d at 1135 (stating that while IJs may not rely upon mere conjecture, they may exercise common sense when finding a respondent's testimony implausible); *see also* Exh. 3, Tab R at 124 ("Police have primary domestic security responsibility for most of [Pakistan]."). Further, Respondent testified that he was unaware he could seek to enter the United States at a land-based port of entry. However, the Court finds this to be implausible as a matter of common sense and given the background evidence, especially because Respondent has traveled to many countries, sometimes with lawful entries and other times without lawful entry, and he actually spent time in immigration camps in countries where he entered unlawfully. *See Singh*, 802 F.3d at 976 (holding that testimony that is implausible in light of background evidence may support an adverse credibility determination); *Jibril*, 423 F.3d at 1135. Moreover, Respondent testified that he was unaware he could obtain a visa to travel to the United States, and

6

that he did not know whether he had applied for visas to travel to other countries. The Court finds this to be implausible, especially given his repeated consultations with a travel agent regarding travel to the United States and elsewhere. *See Singh*, 802 F.3d at 976.

Respondent's wife also made implausible statements during her testimony. To wit, Respondent's wife testified that her biological mother did not know she was raised as a Shiite. However, the Court finds this to be implausible, especially given her testimony that she maintained communication with, and regularly visited, her biological mother during her upbringing. *See Jibril*, 423 F.3d at 1135 (stating that while IJs may not rely upon mere conjecture, they may exercise common sense when finding a respondent's testimony implausible). Further, despite the specific questions that were posed, Respondent's wife's testimony was vague and undetailed regarding her relationship with her biological mother, her biological mother's awareness of her Shiite upbringing, and her communication with Respondent's family after she departed Pakistan with Respondent. *See Huang v. Holder*, 744 F.3d 1149, 1155 (9th Cir. 2014) (noting the IJ may consider the level of detail of testimony to assess credibility); *Jin v. Holder*, 748 F.3d 959, 965–66 (9th Cir. 2014) (holding that the IJ's adverse credibility finding was supported by substantial evidence in part due to lack of detailed testimony).

In sum, given the entirety of this record, the Court finds the implausibility in Respondent's and his wife's testimony to be a second factor supporting an adverse credibility finding for both individuals. *Ren*, 648 F.3d at 1089.

### 3.   Lack of Credible Demeanor

Credibility determinations that are based on a respondent's demeanor are given "special deference." *Singh-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999) (deferring to the IJ's observation that the respondent "began to literally jump around in his seat and to squirm rather uncomfortably while testifying" on cross-examination). However, a demeanor-based adverse credibility finding must specifically and cogently refer to the non-credible aspects of the respondent's demeanor. *See Manes v. Sessions*, 875 F.3d 1261, 1263 (9th Cir. 2017) (per curiam) ("[d]emeanor findings 'should specifically point out the noncredible aspects of the petitioner's demeanor.'" (quoting *Shrestha*, 590 F.3d at 1042)). In this case, Respondent lacked a credible demeanor during portions of his testimony.

Specifically, Respondent became combative during cross-examination, most notably in response to the Department's questions regarding his social media activities. To wit, the Department questioned Respondent regarding a Russian-language post on his social media account which solicits women over the age of twenty-three for employment with "Bollywood Tour." *See* Exh. 7, Tab B at 30 (containing the Russian-language post on Respondent's social media profile); *see also id.*, Tab D (containing the English language translation of said post). Respondent first explained that his friend made the post because he liked Indian movies. Respondent later explained that the post was intended to attract women. During his explanations, Respondent became audibly agitated and combative as he raised his voice level and repeatedly attempted to speak over Department counsel and the translator. *See Huang*, 744 F.3d at 1153 ("under the REAL ID Act, all aspects of the witness's demeanor, including the expression of his countenance, how he sits or stands, whether he is inordinately nervous, his coloration during critical examination, the

modulation or pace of his speech and other non-verbal communication, may convince the observing trial judge that the witness is testifying truthfully or falsely." (internal quotation and citation omitted)). Respondent also accused Department counsel of exaggerating the importance and intent of the post, which, in combination with his audibly agitated demeanor, suggests his testimony lacked credibility.

In sum, given the entirety of this record, the Court finds Respondent's lack of a credible demeanor during cross-examination to be a third factor supporting an adverse credibility finding for him. *See Jin*, 748 F.3d at 965 (concluding that the record supported the IJ's demeanor finding based on the respondent's non-responsive or evasive testimony).

### 4.    Insufficient Corroboration

Where, as here, the testimony alone is not sufficient, the Court may require corroborating evidence to support the respondent's claim. *See Wang*, 861 F.3d at 1009; *see also Ren*, 648 F.3d at 1093. The Court is then left to consider the balance of the evidence in the record in determining whether Respondent qualifies for relief from removal. *See Sidhu v. INS*, 220 F.3d 1085, 1090 (9th Cir. 2000) ("[I]f the trier of fact either does not believe the applicant or does not know what to believe, the applicant's failure to corroborate his testimony can be fatal to his asylum application."). Having considered the same, the Court finds that the balance of the evidence does not independently establish that Respondent qualifies for relief from removal.

The Court directed Respondent to provide evidence corroborating his and his wife's testimony. *See Exh. 5.* However, Respondent failed to provide sufficient evidence to rehabilitate his or his wife's credibility. For example, although Respondent testified that his wife was injured in Pakistan during several attacks, he failed to submit evidence demonstrating any injuries to her, such as medical or hospital records. *See generally* Exhs. 1–11. When asked why his mother in Pakistan could not help obtain such evidence, he explained that he did not wish to involve his mother in his removal proceedings. However, Respondent's explanation is belied by the fact that he apparently was comfortable involving his mother to the point of having her provide an affidavit of support. *See Exh. 3, Tab F.*

Additionally, the Court acknowledges Respondent's evidence from friends and relatives in Pakistan—including affidavits of support from his family, his wife's family, and his wife's imam—intended to corroborate the testimony of Respondent and his wife. *See Exh. 6, Tabs W, Y, AA, and CC; Exh. 3, Tabs F–J, and Q.* However, this evidence is largely hearsay, as the affiants did not present themselves for cross-examination. Therefore, the Court affords this evidence less weight. *See Sharma v. Holder*, 633 F.3d 865, 871 (9th Cir. 2011) (stating that the IJ may give "less weight" to hearsay evidence than other evidence in the record). The Court also gives less weight to other documents purporting to corroborate Respondent's claim, including Respondent's medical records and the civil writ. *See Exh. 10, Tab JJ; Exh. 3, Tab O.* The Court gives all of these supporting documents, including the affidavits, limited weight because they have limited, if any, authentication and because fraudulent documentation has been a problem within illegal emigration from Pakistan, a concern compounded by the adverse credibility finding made above. *See Exh. 4, Tab C.* Because the Court gives limited weight to these portions of Respondent's evidence, they are insufficient to rehabilitate or otherwise establish Respondent's claim. *See, e.g.*,

*Singh v. Holder*, 753 F.3d 826, 836 (9th Cir. 2014) ("[T]here is a difference between testimony that is not credible and evidence that is not entitled to much weight").

Further, the country conditions evidence in the record does not support a finding that Respondent is more likely than not to suffer future harm or torture in Pakistan, even assuming he is a Sunni man married to a Shiite woman—which the Court does not actually find to be true because of Respondent's lack of credibility and insufficient independent corroboration. But even assuming this *arguendo*, the record is insufficient to objectively establish, *independently of Respondent's incredible claim*, a well-founded fear of future harm or a likelihood of future torture by the Pakistani government or by forces the Pakistani government is unable or unwilling to control or to which the Pakistani government would acquiesce. To begin, the record evidence regarding country conditions in Pakistan does describe violence and other abuses related to Shiites in Pakistan. *See, e.g.*, Exh. 3, Tab R at 177 ("[a]rmed sectarian groups connected to organizations banned by the government as extremists, as well as . . . terrorists . . . continued to stage attacks targeting Shia Muslims."). By extension, the Court also acknowledges evidence that inter-sectarian couples—to the extent Respondent would suffer harm due to his marriage to a Shiite woman—experience discrimination or other harm in Pakistan. *See also id.* at 288–90. However, the same evidence demonstrates that the Pakistani government protects Shias and inter-sectarian couples from harm, and actively combats sectarian violence and discrimination towards such groups. *See, e.g., id.* at 142 (documenting the Pakistani Frontier Corp's efforts to protect Shiite neighborhoods), 168 ("[a]uthorities provided enhanced security for Shia religious processions"), and 176 ("[t]he constitution states, 'Subject to law, public order, and morality, every citizen shall have the right to profess, practice, and propagate his religion.'"). Therefore, the record shows that the Pakistani government would not be unable or unwilling to control would-be persecutors or that it would consent or acquiesce to any harm that Respondent may suffer. *See Del Cid Marroquin v. Lynch*, 823 F.3d 933, 937 (9th Cir. 2016) (per curiam) ("[a] government does not 'acquiesce' to torture where the government actively, albeit not entirely successfully, combats the illegal activities."); *Matter of A-B-*, 28 I&N Dec. 199, 204 (A.G. 2021) ("Where the government is actively engaged in protecting its citizens, failures in particular cases or high levels of crime do not establish a breach of the government's duty to protect its citizenry. *See, e.g., Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1064–65 (9th Cir. 2020) (although Guatemala 'has a long way to go in addressing domestic violence,' substantial evidence, including Guatemala's efforts to curb violence against women, supported the determination that the Guatemalan Government could have protected the alien against her abuser)[.]").

The Court also considered both the live testimony and the report of Respondent's expert, who testified regarding violence towards Shiites, as well as discrimination and other harm suffered by inter-sectarian couples in Pakistan. *See* Exh. 8, Tab GG at 430–31. Even so, the evidence in the record demonstrates that Respondent may internally relocate within Pakistan to avoid harm stemming from his marriage. *See, e.g.*, Exh. 3, Tab R at 167 ("Shia[s] . . . reported ongoing instances of targeted killings and enforced disappearances in *limited parts* of the country.") (emphasis added), 288 ("views on Sunni-Shia marriages vary considerably throughout Pakistan") (internal quotation omitted), and 289 ("[i]f there are cases of mistreatments in any particular region, people relocate to bigger cities where people are usually not much bothered [by inter-sectarian marriages]") (internal quotation omitted); Exh. 4, Tab A at 6 ("Pakistan's size and diversity generally allows for reasonable relocation options depending on the person's individual

circumstances and the security situation in the area of relocation . . . "); *see also Castillo v. Barr*, 980 F.3d 1278 (9th Cir. 2020) (holding that the IJ must provide a reasoned explanation for why an expert's testimony is not dispositive); *Matter of M-A-M-Z-*, 28 I&N Dec. 173 (BIA 2020) (same). Therefore, the record shows that Respondent may successfully relocate within Pakistan to avoid any harm he may suffer in that country. *See Maldonado v. Lynch*, 786 F.3d 1155, 1163 (9th Cir. 2015) (en banc) (stating that where evidence of internal relocation is relevant, it "must be considered").

Accordingly, after reviewing the record in its entirety and based on the totality of the circumstances, the Court finds that Respondent failed to carry his burden of proof under the standards set forth in the REAL ID Act. *See* INA §§ 208(b)(1)(B)(ii), 240(c)(4)(B).

## C.    Asylum under INA section 208

In this case, Respondent's claim was not credible and was not independently established, and on that basis alone, he is not eligible for asylum. *See Matter of J-Y-C-*, 24 I&N Dec. 260, 266 (BIA 2007) (concluding the respondent failed to meet the burden for asylum due to a lack of credibility); *Matter of M-S-*, 21 I&N Dec. 125, 129 (BIA 1995) (same); *see also Parada v. Sessions*, 902 F.3d 901, 909 (9th Cir. 2018) (reasoning that for an individual to establish a well-founded fear of persecution, the claim must be subjectively genuine and objectively reasonable). Accordingly, the Court will deny Respondent's application for asylum.

## D.    Withholding of Removal under INA section 241(b)(3)

Again, Respondent's claim was not credible and was not independently established, and on this basis alone, he is not eligible for withholding of removal under the INA. *See Matter of M-S-*, 21 I&N Dec. at 129 (reasoning that a lack of credibility results in a denial of withholding of removal under the INA). Accordingly, the Court will deny Respondent's application for withholding of removal under the INA.

## E.    Protection under the CAT

Pursuant to the CAT, the United States may not remove an alien to a country where it is more likely than not that he will be tortured. *See* 8 C.F.R. § 1208.16(a) (2021), (c)(2). Torture is an extreme form of cruel and inhuman treatment, defined as any act that is specifically intended to inflict severe pain or suffering, whether physical or mental. *See Matter of J-R-G-P-*, 27 I&N Dec. 482, 484 (BIA 2018); 8 C.F.R. § 1208.18(a)(1), (a)(5). The act must be directed against a person in the torturer's custody or physical control and must be inflicted by or with the consent, acquiescence, or willful blindness of a public official or other person acting in an official capacity. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir. 2003); 8 C.F.R. § 1208.18(a)(1). Acquiescence only requires that a public official be aware of such activity and breach a legal responsibility to intervene to prevent it. *See Zheng*, 332 F.3d at 1194; 8 C.F.R. § 1208.18(a)(7).

A respondent seeking protection under the CAT bears the burden of establishing that it is more likely than not that he will be tortured. *See* 8 C.F.R. § 1208.16(c)(2). To do so, he "must show both a greater than 50 percent chance that he will be tortured . . . and that a public official

would inflict, instigate, consent to or acquiesce in that torture." *Madrigal v. Holder*, 716 F.3d 499, 508 (9th Cir. 2013) (citations omitted). In assessing whether it is more likely than not a respondent will be tortured, all evidence relevant to the possibility of future torture should be considered. Such evidence includes, but is not limited to: (1) evidence of past torture inflicted upon the respondent; (2) evidence that the respondent could relocate to a part of the country of removal where he is not likely to be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal, where applicable; and (4) other relevant information regarding conditions in the country of removal. *See* 8 C.F.R. § 1208.16(c)(3).

As discussed above, neither Respondent nor his wife testified credibly and the claim was not otherwise established. Thus, Respondent did not establish that he suffered past harm, much less torture, in Pakistan. *See Nuru v. Gonzalez*, 404 F.3d 1207, 1217 (9th Cir. 2005) ("[p]ast torture is the first factor we consider in evaluating the likelihood of future torture because past conduct frequently tells us much about how an individual or a government will behave in the future."). Respondent's and his wife's lack of credibly also significantly undermines any claim that he will be tortured in the future. *See Shrestha*, 590 F.3d at 1048–49 (observing that while "[a]n adverse credibility determination is not necessarily a death knell to CAT protection," when the respondent fails to testify credibly the IJ "would have to find that the reports alone compelled the conclusion that he is more likely than not to be tortured"). As also discussed above, Respondent did not establish, independently from his incredible testimony, a likelihood of future torture.

In sum, on this record, the Court cannot conclude that Respondent would be subject to a particularized risk of torture by or with the acquiescence of the Pakistani government. *See Alphonsus v. Holder*, 705 F.3d 1031, 1049 (9th Cir. 2013) ("Despite the troubling country reports, the record evidence does not compel the conclusion that [the respondent] himself will be, more likely than not, tortured upon his return.") (emphasis in original), *abrogated on other grounds by Guerrero v. Whitaker*, 908 F.3d 541 (9th. Cir 2018). Accordingly, the Court denies his application for protection under Article III of the CAT.

For the reasons set forth above, the Court will enter the following orders:

## ORDERS

**IT IS ORDERED** that Respondent's motion to oppose evidence be **GRANTED**.

**IT IS FURTHER ORDERED** that Respondent's application for asylum under INA section 208 be **DENIED**.

**IT IS FURTHER ORDERED** that Respondent's application for withholding of removal under INA section 241(b)(3) be **DENIED**.

**IT IS FURTHER ORDERED** that Respondent's application for protection under Article III of the CAT be **DENIED**.

**IT IS FURTHER ORDERED** that Respondent be **REMOVED** from the United States to **PAKISTAN**.

DATE: _2/23/2021_

_Curtis G. White_

**Curtis G. White**
**Immigration Judge**

**Advisal to Respondent:** The Court has ordered you removed from the United States. If you willfully fail or refuse to apply for the required travel documents to depart the United States, to present yourself for removal as instructed, to depart the United States as instructed, or to take any action, or conspire to take any action, to prevent or hamper your departure, you will be subject to a civil monetary penalty of not more than $813 per day you are in violation. INA §§ 240(c)(5), 274D(a); 8 C.F.R. § 1240.13(d).

**Appeal Rights:** All parties have the right to appeal the decision in this case. Any appeal is due at the Board of Immigration Appeals on or before thirty (30) calendar days from the date of service of this Order.

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL (M)    PERSONAL SERVICE (P)
TO: ( ) ALIEN ( ) ALIEN c/o Custodial Officer (M) ALIEN'S ATT/REP ( ) DHS

DATE: _2/23/2021_    BY COURT STAFF: _____
Attachments: ( ) EOIR-33    ( ) EOIR-28    ( ) Legal Services List    ( ) Other

12

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
10250 RANCHO RD., SUITE 201A
ADELANTO, CA  92301

Crimmigration Inc.
manzar, sahreen
2921 Fulton ave
Sacramento, CA  95821

In the matter of            File A 203-681-527      DATE: Feb 23, 2021
ASGHAR, MUDASAR

Unable to forward - No address provided.

X Attached is a copy of the decision of the Immigration Judge. This decision
is final unless an appeal is filed with the Board of Immigration Appeals
within 30 calendar days of the date of the mailing of this written decision.
See the enclosed forms and instructions for properly preparing your appeal.
Your notice of appeal, attached documents, and fee or fee waiver request
must be mailed to:    Board of Immigration Appeals
                      Office of the Clerk
                      5107 Leesburg Pike, Suite 2000
                      Falls Church, VA 22041

__ Attached is a copy of the decision of the immigration judge as the result
of your Failure to Appear at your scheduled deportation or removal hearing.
This decision is final unless a Motion to Reopen is filed in accordance
with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
motion must be filed with this court:
                      IMMIGRATION COURT
                      10250 RANCHO RD., SUITE 201A
                      ADELANTO, CA  92301

__ Attached is a copy of the decision of the immigration judge relating to a
Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
1208.31(g)(1), no administrative appeal is available. However, you may file
a petition for review within 30 days with the appropriate Circuit Court of
Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.

__ Attached is a copy of the decision of the immigration judge relating to a
Credible Fear Review. This is a final order. No appeal is available.

__ Other: _____

                                    COURT CLERK
                                    IMMIGRATION COURT                    FF

    cc: MCMAHON, MATTHEW, ESQ.
        10250 RANCHO ROAD
        ADELANTO, CA,  92301

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
~~ADELANTO, CALIFORNIA~~

| | | |
|---|---|---|
| File Number: | A 203-681-527 | **DETAINED** |
| In the Matter of: | | |
| | **ASGHAR,**<br>**Mudasar,** | **IN REMOVAL PROCEEDINGS** |
| Respondent. | | |

**CHARGES:**     Immigration and Nationality Act (INA) section 212(a)(6)(A)(i)—*alien present without admission or parole after inspection*

INA section 212(a)(7)(A)(i)(I)—*alien not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document at the time of application for admission*

**APPLICATIONS:**    (1) Asylum under INA section 208;
(2) Withholding of Removal under INA section 241(b)(3); and
(3) Protection under Article III of the United Nations Convention Against Torture (CAT)

**ON BEHALF OF RESPONDENT:**          **ON BEHALF OF THE DEPARTMENT:**
Sahreen Manzar, Esquire                Matthew McMahon, Assistant Chief Counsel
Crimmigration, Inc.                    U.S. Department of Homeland Security
2921 Fullerton Avenue                  10250 Rancho Road
Sacramento, California 95812           Adelanto, California 92301

## DECISION AND ORDERS OF THE IMMIGRATION JUDGE

### I.     Procedural History

Mudasar Asghar (Respondent) is a native and citizen of Pakistan. *See* Exh. 1 at 1. On March 2, 2020, the U.S. Department of Homeland Security (Department) personally served Respondent with a Notice to Appear (NTA). *Id.* Therein, the Department alleged the following: (1) Respondent is not a citizen or national of the United States; (2) he is a native and citizen of Pakistan; (3) he arrived in the United States at or near Calexico, California, on or about December 29, 2019; (4) he is an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document; and (5) he was not then admitted or paroled after inspection by an immigration officer. *Id.* Based on these factual allegations, the

1

Department charged Respondent as inadmissible pursuant to INA section 212(a)(6)(A)(i), as an alien present without admission or parole after inspection, and INA section 212(a)(7)(A)(i)(I), as an alien not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document at the time of application for admission. *Id.* On March 2, 2020, jurisdiction vested and removal proceedings commenced when the Department filed the NTA with the Court. *See* 8 C.F.R. § 1003.14(a) (2020); Exh. 1 at 1.

On March 27, 2020, Respondent appeared with counsel before the Court and admitted all five factual allegations and conceded both charges of inadmissibility. *See* Exh. 1 at 1. Based upon Respondent's admissions and concessions, the Court found the Department met its burden of establishing by clear and convincing evidence that Respondent is subject to removal from the United States. Based on the Department's recommendation, the Court directed Pakistan as the country of removal.

On October 5, 2020, Respondent filed an amended Form I-589, Application for Asylum and for Withholding of Removal (Form I-589).[1] *See* Exh. 3, Tab A. On January 7, 2021, January 13, 2021, and January 21, 2021, Respondent appeared with counsel for merits hearings and presented testimony in support of his applications for relief.[2] At a January 28, 2021, merits hearing, Respondent's expert—upon whom the Department declined to conduct *voir dire*—and Respondent's wife presented testimony. The Court closed the record at the conclusion of the January 28, 2021, merits hearing.

For the following reasons, the Court will deny Respondent's applications for relief.

## II.    Law, Findings of Fact, and Analysis

*The evidence in this case consists of testimony by Respondent, his wife, and his expert, and the documentary evidence submitted by both parties.[3] The Court has carefully considered all of the evidence even if not specifically referenced in this decision.*

---

[1] Although Respondent previously submitted a Form I-589 on August 31, 2020—*see* Exhibit 2— he stated his intent to move forward with the amended Form I-589 he submitted on October 5, 2020, as contained in Exhibit 3, Tab A.

[2] Prior to January 7, 2021, the matter was transferred to the undersigned Immigration Judge. In accordance with the applicable regulation, the undersigned Immigration Judge familiarized himself with the record of proceeding prior to the January 7, 2021, merits hearing. *See* 8 C.F.R. § 1240.1(b) (2020).

[3] The Department objected to admission of Respondent's submissions contained in Exhibit 3, Tabs F through M, O, and Q; Exhibit 6, Tabs S through DD; all of Exhibit 9; and all of Exhibit 10. Specifically, the Department argued that these submissions were not authenticated and were likely fraudulent. *See also* Exh. 4. Respondent objected to admission of the Department's submissions contained in Exhibit 7, Tabs C and E. Specifically, Respondent argued that that these submissions were not relevant and did not pertain specifically to Respondent. The Court held the objected submissions in abeyance to allow to the parties to lay a foundation for their admission during testimony. At the merits hearing on January 21, 2021, the Court found that the parties laid sufficient foundation for the objected submissions, admitted all of the objected submissions into the record, and will afford them the appropriate weight. In so finding, the Court notes that removal proceedings are not bound by the strict rules of evidence that apply in other courts. *Baliza v. INS*, 702 F.2d 1231 (9th Cir. 1983).



## A.    Respondent's Motion to Oppose Evidence

On February 8, 2020, the Department submitted a closing brief which included two tabs of impeachment evidence. *See* Dep't's Closing Br., Tabs A–B (Feb. 8, 2020). Subsequently, on February 12, 2020, Respondent submitted a motion opposing the evidence contained in Tabs A and B of the Department's closing brief. *See* Resp't's Mot. to Oppose Evidence (Feb. 12, 2020). The Court closed the evidentiary record at the conclusion of the last merits hearing on January 28, 2020. Thus, the Court agrees with Respondent and finds that the evidence submitted with the Department's closing brief should not be admitted because it is untimely, and because Respondent never had opportunity to examine or address it.

Accordingly, the Court grants Respondent's motion to oppose. Therefore, Tabs A and B of the Department's closing brief are not admitted as evidence, and Court did not consider their contents in evaluating Respondent's credibility or applications for relief.

## B.    Credibility and Corroboration

Respondent's applications are subject to the credibility provisions of the REAL ID Act. *See Matter of S-B-*, 24 I&N Dec. 42, 43 (BIA 2006). The Court may base a credibility determination on the demeanor, candor, or responsiveness of the respondent, the inherent plausibility of the respondent's account, the consistency between the respondent's written and oral statements, the internal consistency of each such statement, the consistency of such statements with other evidence of record, and any inaccuracies or falsehoods in such statements, or any other relevant factor. *See* INA §§ 208(b)(1)(B)(iii), 240(c)(4)(C); *see also Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010) (explaining the REAL ID Act standards for credibility determinations).

In *Shrestha*, the United Stated Court of Appeals for the Ninth Circuit (Ninth Circuit) noted that "it is plain from the REAL ID Act's terms that an adverse credibility determination must be made after considering the totality of circumstances, and all relevant factors." *Shrestha,* 590 F.3d at 1040 (internal quotations and citation omitted). The Ninth Circuit further noted that while the REAL ID Act provides a list of factors that may be considered when determining credibility, the "list is not exhaustive because the trier of fact may also consider any other relevant factor." *Id.* (internal quotation and citation omitted).

Further, an immigration judge (IJ) may make a credibility determination without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the respondent's claim. *See* INA § 208(b)(1)(B)(iii); *Malkandi v. Holder*, 576 F.3d 906, 916 (9th Cir. 2009); *Matter of Y-I-M-*, 27 I&N Dec. 724 (BIA 2019). The REAL ID Act "imports a 'rule of reason' into the assessment," as credibility determinations must "be reasonable and take into consideration the individual circumstances of the [respondent]." *Shrestha*, 590 F.3d at 1041 (quoting *Lin v. Mukasey*, 521 F.3d 22, 28 n.3 (1st Cir. 2008)). Where testimony alone is insufficient, the Court may require corroborating evidence to support the respondent's claim. *Wang v. Sessions*, 861 F.3d 1003, 1009 (9th Cir. 2017).

Here, under the totality of the circumstances, the Court finds that neither Respondent nor his wife were credible witnesses. The Court bases this determination, as discussed in more detail

below, on the inconsistencies in Respondent's and his wife's testimony, the implausibility of some of their claims, and Respondent's demeanor during some of his testimony. Indeed, while "the normal limits of human understanding and memory may make some inconsistencies or lack of recall present in any witness' case," the problems in this case exceed those limits. *Shrestha*, 590 F.3d at 1044–45. Moreover, when asked for additional information, Respondent and his wife provided unpersuasive explanations for the inconsistencies and implausibilities in their testimony. The Court finds that the issues with their credibility are material and, taken cumulatively, substantial, as they relate directly to the facts and circumstances of their life in Pakistan, their travel to the United States, and Respondent's fear of returning to Pakistan.

       1.    Inconsistencies

The Court may rely upon inconsistencies between the respondent's testimony and other evidence of record, including the respondent's previous testimony. *See* INA §§ 208(b)(1)(B)(iii), 240(c)(4)(C); *Matter of Y-I-M-*, 27 I&N Dec. at 730. Further, the Court must provide the respondent with a "reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum." *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999). In this case, there were multiple inconsistencies relating to the testimony of both Respondent and his wife.

The Court will first address inconsistencies in Respondent's testimony. To begin, during his credible fear interview, Respondent stated that he never thought of departing Pakistan until he was attacked on June 12, 2019. *See* Exh. 7, Tab A at 26. However, during the credible fear interview, and on cross-examination, Respondent stated that he met with his travel agent regarding the possibility of departing Pakistan on May 1, 2019. *See id.* at 27. This inconsistency is significant because it directly relates to Respondent's decision to depart Pakistan, in addition to his timing thereof. *See Zamanov v. Holder*, 649 F.3d 969, 973 (9th Cir. 2011) ("[t]estimony about the events leading up to the petitioner's departure go to the 'heart of the claim.'"); *Goel v. Gonzales*, 490 F.3d 735, 739 (9th Cir. 2007) (concluding that inconsistencies between testimony and documentary evidence support an adverse credibility finding where inconsistencies go to the heart of the claim); *see also Shrestha*, 590 F.3d at 1046–47 (recognizing that while "inconsistencies no longer need to go to the heart" of the claim, when they do "it doubtless is of great weight"). When confronted with this inconsistency, Respondent explained that while he did speak with his travel agent before June 12, 2019, they did not speak in-person until after June 12, 2019. However, Respondent's explanation does not address this inconsistency, much less convince the Court that this inconsistency is trivial or inconsequential. Indeed, Respondent's lack of a coherent explanation suggests that he either testified to dates he could not accurately recall, or that he contemplated departing Pakistan for reasons unrelated to his fear of return to that country. *See, e.g.*, *Matter of Y-I-M-*, 27 I&N Dec. at 726 (stating that the Court "is not required to adopt a respondent's explanation if there are other permissible views of the evidence based upon the record" (internal citations omitted)).

Relatedly, during his credible fear interview, Respondent stated that the only times he left Pakistan were in 2017 and 2018. *See* Exh. 7, Tab A at 13. Further, Respondent testified that he has worked at his father's butcher shop in Pakistan since 2003, and that he was never employed elsewhere. However, on cross-examination, Respondent admitted that he lived in Russia for

4

several months from 2012 through 2013, where he was employed at a cafe. Although these inconsistencies regarding Respondent's employment history and travel outside Pakistan do not directly relate to his fear of returning to Pakistan, they are significant because they bear directly upon his credibility as a witness. *See Yan Liu v. Holder*, 640 F.3d 918, 925–26 (9th Cir. 2011) (relying on differences between an airport interview and subsequent elaboration to support an adverse credibility determination); *see also Shrestha*, 590 F.3d at 1046 (recognizing that "inconsistencies no longer need to go to the heart" of the claim). When confronted with these inconsistencies, Respondent explained that the interpreter did not accurately interpret his testimony during his credible fear interview. Nonetheless, the Court is not persuaded by Respondent's explanation, because Respondent confirmed that his testimony during his credible fear interview was otherwise correct, the same interpreter was used throughout the interview, and the Court has no other reason to question the accuracy of the interview records. *See* Exh. 7, Tab A at 1, 28–29; *see also Matter of J-C-H-F-*, 27 I&N Dec. 211, 212 (BIA 2018) ("[g]enerally, there is a presumption of reliability of Government documents." (quoting *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995)).

Moreover, although Respondent testified that he remains Sunni, he stated in his Form I-589 that he and his wife "faced persecution and beating [sic] due to changing our sect from Sunni and Shia to Ahle-Tashi."[4] Exh. 3, Tab A at 15, 19; *see also* Exh. 3, Tab O at 109 ("[four] unknown persons severe[ly] beat[] me and my wife due to change the sect [sic] Sunni to Ahle Tesshi"). This inconsistency is significant because it relates to the reason that Respondent's persecutors seek to harm him. *See Goel*, 490 F.3d at 739 (concluding that inconsistencies between testimony and documentary evidence support an adverse credibility finding where inconsistencies go to the heart of the claim); *Don v. Gonzales*, 476 F.3d 738, 741–43 (9th Cir. 2007) (concluding that inconsistencies regarding the reason the petitioner's persecutors sought to harm him go to the heart of the claim and are not trivial); *see also Shrestha*, 590 F.3d at 1046–47 (recognizing that while "inconsistencies no longer need to go to the heart" of the claim, when they do "it doubtless is of great weight"). The Court considered Respondent's explanation for this inconsistency. However, the Court finds the explanation to be insufficient to overcome the inconsistency because the conflicting statements were not ambiguous or equivocal or misspeak given offhand. In particular, the statement in the Form I-589 was written and should have aligned with Respondent's explanation for the inconsistency, but did not. *See Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) (noting that the IJ does not have "to engage in multiple iterations of the opportunity to explain. Once the IJ has provided a specific, cogent reason for disbelieving the alien's rationalization, the IJ need not offer the alien another opportunity to address the IJ's concerns").

Next, the Court addresses inconsistencies in Respondent's wife's testimony. To begin, Respondent's wife testified on cross-examination that she and Respondent first met at a wedding in November 2018, while Respondent testified that the wedding occurred in January 2019. Similarly, Respondent's wife testified that their housemaid told their neighbors that she is Shiite, *see also* Exhibit 3, Tab D at 73, while Respondent testified that his mother told the neighbors that his wife is Shiite. These inconsistencies are significant because they directly relate to the events leading up to their departure from Pakistan. *See Zamanov*, 649 F.3d at 973 ("[t]estimony about the events leading up to the petitioner's departure go to the 'heart of the claim.'"); *see also Shrestha*, 590 F.3d at 1046–47 (recognizing that while "inconsistencies no longer need to go to

---

[4] Respondent later testified on cross-examination that "Shiite" and "Ahle-Tashi" are synonymous in Pakistan.

the heart" of the claim, when they do "it doubtless is of great weight"). Neither Respondent nor his wife explained these inconsistencies, even though they had opportunity to do so.

Additionally, Respondent testified on cross-examination that he and his wife were arrested at a bus stop in Peru on their way to the United States. He further testified that he and his wife were taken to a police station, where they were joined by a group of four Pakistani sisters in the same room, and that they continued to travel with the four sisters on a bus after they were released from police custody. However, on cross-examination, Respondent's wife testified she did not know whether there were any Pakistanis arrested with them that day, nor did she recall any details regarding four Pakistani sisters at the police station that day or at any time thereafter. Although this inconsistency does not directly relate to Respondent's fear of returning to Pakistan, it is significant because Respondent was able to recall these events and individuals from their travel to the United States, while his wife was unable to recall the same. *See Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185–86 (9th Cir. 2016) (noting that adverse credibility determinations may be supported by omissions that are not merely "details"); *see also Shrestha*, 590 F.3d at 1046 (recognizing that "inconsistencies no longer need to go to the heart" of the claim). Again, neither Respondent nor his wife explained this inconsistency.

In sum, given the entirety of this record, the Court finds the inconsistencies in Respondent's and his wife's testimony to be one factor supporting an adverse credibility finding for both individuals. *Ren v. Holder*, 648 F.3d 1079, 1089 (9th Cir. 2011).

2.    Implausibilities

The Court may also consider the plausibility of the respondent's account in assessing his credibility. INA §§ 208(b)(1)(B)(iii), 240(c)(4)(C); *Singh v. Lynch*, 802 F.3d 972, 976 (9th Cir. 2015) (holding that testimony that is implausible in light of background evidence may support an adverse credibility determination); *Jibril v. Gonzales*, 423 F.3d 1129, 1135 (9th Cir. 2005) (permitting the Court to exercise "common sense in rejecting" the respondent's testimony). In this case, key portions of both Respondent's and his wife's testimony are implausible.

To begin, Respondent made multiple implausible statements during his testimony. For instance, Respondent testified that after he and his wife were attacked on May 3, 2019, he obtained a civil writ from a court before he approached the police. Respondent explained that he was at first unaware he could report the incident to the police, which the Court finds to be implausible as a matter of common sense. *See Jibril*, 423 F.3d at 1135 (stating that while IJs may not rely upon mere conjecture, they may exercise common sense when finding a respondent's testimony implausible); *see also* Exh. 3, Tab R at 124 ("Police have primary domestic security responsibility for most of [Pakistan]."). Further, Respondent testified that he was unaware he could seek to enter the United States at a land-based port of entry. However, the Court finds this to be implausible as a matter of common sense and given the background evidence, especially because Respondent has traveled to many countries, sometimes with lawful entries and other times without lawful entry, and he actually spent time in immigration camps in countries where he entered unlawfully. *See Singh*, 802 F.3d at 976 (holding that testimony that is implausible in light of background evidence may support an adverse credibility determination); *Jibril*, 423 F.3d at 1135. Moreover, Respondent testified that he was unaware he could obtain a visa to travel to the United States, and

6



that he did not know whether he had applied for visas to travel to other countries. The Court finds this to be implausible, especially given his repeated consultations with a travel agent regarding travel to the United States and elsewhere. *See Singh*, 802 F.3d at 976.

Respondent's wife also made implausible statements during her testimony. To wit, Respondent's wife testified that her biological mother did not know she was raised as a Shiite. However, the Court finds this to be implausible, especially given her testimony that she maintained communication with, and regularly visited, her biological mother during her upbringing. *See Jibril*, 423 F.3d at 1135 (stating that while IJs may not rely upon mere conjecture, they may exercise common sense when finding a respondent's testimony implausible). Further, despite the specific questions that were posed, Respondent's wife's testimony was vague and undetailed regarding her relationship with her biological mother, her biological mother's awareness of her Shiite upbringing, and her communication with Respondent's family after she departed Pakistan with Respondent. *See Huang v. Holder*, 744 F.3d 1149, 1155 (9th Cir. 2014) (noting the IJ may consider the level of detail of testimony to assess credibility); *Jin v. Holder*, 748 F.3d 959, 965–66 (9th Cir. 2014) (holding that the IJ's adverse credibility finding was supported by substantial evidence in part due to lack of detailed testimony).

In sum, given the entirety of this record, the Court finds the implausibility in Respondent's and his wife's testimony to be a second factor supporting an adverse credibility finding for both individuals. *Ren*, 648 F.3d at 1089.

### 3.    Lack of Credible Demeanor

Credibility determinations that are based on a respondent's demeanor are given "special deference." *Singh-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999) (deferring to the IJ's observation that the respondent "began to literally jump around in his seat and to squirm rather uncomfortably while testifying" on cross-examination). However, a demeanor-based adverse credibility finding must specifically and cogently refer to the non-credible aspects of the respondent's demeanor. *See Manes v. Sessions*, 875 F.3d 1261, 1263 (9th Cir. 2017) (per curiam) ("[d]emeanor findings 'should specifically point out the noncredible aspects of the petitioner's demeanor.'" (quoting *Shrestha*, 590 F.3d at 1042)). In this case, Respondent lacked a credible demeanor during portions of his testimony.

Specifically, Respondent became combative during cross-examination, most notably in response to the Department's questions regarding his social media activities. To wit, the Department questioned Respondent regarding a Russian-language post on his social media account which solicits women over the age of twenty-three for employment with "Bollywood Tour." *See* Exh. 7, Tab B at 30 (containing the Russian-language post on Respondent's social media profile); *see also id.*, Tab D (containing the English language translation of said post). Respondent first explained that his friend made the post because he liked Indian movies. Respondent later explained that the post was intended to attract women. During his explanations, Respondent became audibly agitated and combative as he raised his voice level and repeatedly attempted to speak over Department counsel and the translator. *See Huang*, 744 F.3d at 1153 ("under the REAL ID Act, all aspects of the witness's demeanor, including the expression of his countenance, how he sits or stands, whether he is inordinately nervous, his coloration during critical examination, the

modulation or pace of his speech and other non-verbal communication, may convince the observing trial judge that the witness is testifying truthfully or falsely." (internal quotation and citation omitted)).  Respondent also accused Department counsel of exaggerating the importance and intent of the post, which, in combination with his audibly agitated demeanor, suggests his testimony lacked credibility.

In sum, given the entirety of this record, the Court finds Respondent's lack of a credible demeanor during cross-examination to be a third factor supporting an adverse credibility finding for him. *See Jin*, 748 F.3d at 965 (concluding that the record supported the IJ's demeanor finding based on the respondent's non-responsive or evasive testimony).

4.  Insufficient Corroboration

Where, as here, the testimony alone is not sufficient, the Court may require corroborating evidence to support the respondent's claim. *See Wang*, 861 F.3d at 1009; *see also Ren*, 648 F.3d at 1093.  The Court is then left to consider the balance of the evidence in the record in determining whether Respondent qualifies for relief from removal. *See Sidhu v. INS*, 220 F.3d 1085, 1090 (9th Cir. 2000) ("[I]f the trier of fact either does not believe the applicant or does not know what to believe, the applicant's failure to corroborate his testimony can be fatal to his asylum application.").  Having considered the same, the Court finds that the balance of the evidence does not independently establish that Respondent qualifies for relief from removal.

The Court directed Respondent to provide evidence corroborating his and his wife's testimony. *See* Exh. 5.  However, Respondent failed to provide sufficient evidence to rehabilitate his or his wife's credibility.  For example, although Respondent testified that his wife was injured in Pakistan during several attacks, he failed to submit evidence demonstrating any injuries to her, such as medical or hospital records. *See generally* Exhs. 1–11.  When asked why his mother in Pakistan could not help obtain such evidence, he explained that he did not wish to involve his mother in his removal proceedings.  However, Respondent's explanation is belied by the fact that he apparently was comfortable involving his mother to the point of having her provide an affidavit of support. *See* Exh. 3, Tab F.

Additionally, the Court acknowledges Respondent's evidence from friends and relatives in Pakistan—including affidavits of support from his family, his wife's family, and his wife's imam—intended to corroborate the testimony of Respondent and his wife. *See* Exh. 6, Tabs W, Y, AA, and CC; Exh. 3, Tabs F–J, and Q.  However, this evidence is largely hearsay, as the affiants did not present themselves for cross-examination.  Therefore, the Court affords this evidence less weight. *See Sharma v. Holder*, 633 F.3d 865, 871 (9th Cir. 2011) (stating that the IJ may give "less weight" to hearsay evidence than other evidence in the record).  The Court also gives less weight to other documents purporting to corroborate Respondent's claim, including Respondent's medical records and the civil writ. *See* Exh. 10, Tab JJ; Exh. 3, Tab O.  The Court gives all of these supporting documents, including the affidavits, limited weight because they have limited, if any, authentication and because fraudulent documentation has been a problem within illegal emigration from Pakistan, a concern compounded by the adverse credibility finding made above. *See* Exh. 4, Tab C.  Because the Court gives limited weight to these portions of Respondent's evidence, they are insufficient to rehabilitate or otherwise establish Respondent's claim. *See, e.g.*,

*Singh v. Holder*, 753 F.3d 826, 836 (9th Cir. 2014) ("[T]here is a difference between testimony that is not credible and evidence that is not entitled to much weight").

Further, the country conditions evidence in the record does not support a finding that Respondent is more likely than not to suffer future harm or torture in Pakistan, even assuming he is a Sunni man married to a Shiite woman—which the Court does not actually find to be true because of Respondent's lack of credibility and insufficient independent corroboration. But even assuming this *arguendo*, the record is insufficient to objectively establish, *independently of Respondent's incredible claim*, a well-founded fear of future harm or a likelihood of future torture by the Pakistani government or by forces the Pakistani government is unable or unwilling to control or to which the Pakistani government would acquiesce. To begin, the record evidence regarding country conditions in Pakistan does describe violence and other abuses related to Shiites in Pakistan. *See, e.g.*, Exh. 3, Tab R at 177 ("[a]rmed sectarian groups connected to organizations banned by the government as extremists, as well as . . . terrorists . . . continued to stage attacks targeting Shia Muslims."). By extension, the Court also acknowledges evidence that inter-sectarian couples—to the extent Respondent would suffer harm due to his marriage to a Shiite woman—experience discrimination or other harm in Pakistan. *See also id.* at 288–90. However, the same evidence demonstrates that the Pakistani government protects Shias and inter-sectarian couples from harm, and actively combats sectarian violence and discrimination towards such groups. *See, e.g., id.* at 142 (documenting the Pakistani Frontier Corp's efforts to protect Shiite neighborhoods), 168 ("[a]uthorities provided enhanced security for Shia religious processions"), and 176 ("[t]he constitution states, 'Subject to law, public order, and morality, every citizen shall have the right to profess, practice, and propagate his religion.'"). Therefore, the record shows that the Pakistani government would not be unable or unwilling to control would-be persecutors or that it would consent or acquiesce to any harm that Respondent may suffer. *See Del Cid Marroquin v. Lynch*, 823 F.3d 933, 937 (9th Cir. 2016) (per curiam) ("[a] government does not 'acquiesce' to torture where the government actively, albeit not entirely successfully, combats the illegal activities."); *Matter of A-B-*, 28 I&N Dec. 199, 204 (A.G. 2021) ("Where the government is actively engaged in protecting its citizens, failures in particular cases or high levels of crime do not establish a breach of the government's duty to protect its citizenry. *See, e.g., Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1064–65 (9th Cir. 2020) (although Guatemala 'has a long way to go in addressing domestic violence,' substantial evidence, including Guatemala's efforts to curb violence against women, supported the determination that the Guatemalan Government could have protected the alien against her abuser)[.]").

The Court also considered both the live testimony and the report of Respondent's expert, who testified regarding violence towards Shiites, as well as discrimination and other harm suffered by inter-sectarian couples in Pakistan. *See* Exh. 8, Tab GG at 430–31. Even so, the evidence in the record demonstrates that Respondent may internally relocate within Pakistan to avoid harm stemming from his marriage. *See, e.g.*, Exh. 3, Tab R at 167 ("Shia[s] . . . reported ongoing instances of targeted killings and enforced disappearances in *limited parts* of the country.") (emphasis added), 288 ("views on Sunni-Shia marriages vary considerably throughout Pakistan") (internal quotation omitted), and 289 ("[i]f there are cases of mistreatments in any particular region, people relocate to bigger cities where people are usually not much bothered [by inter-sectarian marriages]") (internal quotation omitted); Exh. 4, Tab A at 6 ("Pakistan's size and diversity generally allows for reasonable relocation options depending on the person's individual

circumstances and the security situation in the area of relocation . . . "); *see also Castillo v. Barr*, 980 F.3d 1278 (9th Cir. 2020) (holding that the IJ must provide a reasoned explanation for why an expert's testimony is not dispositive); *Matter of M-A-M-Z-*, 28 I&N Dec. 173 (BIA 2020) (same). Therefore, the record shows that Respondent may successfully relocate within Pakistan to avoid any harm he may suffer in that country. *See Maldonado v. Lynch*, 786 F.3d 1155, 1163 (9th Cir. 2015) (en banc) (stating that where evidence of internal relocation is relevant, it "must be considered").

Accordingly, after reviewing the record in its entirety and based on the totality of the circumstances, the Court finds that Respondent failed to carry his burden of proof under the standards set forth in the REAL ID Act. *See* INA §§ 208(b)(1)(B)(ii), 240(c)(4)(B).

### C.    Asylum under INA section 208

In this case, Respondent's claim was not credible and was not independently established, and on that basis alone, he is not eligible for asylum. *See Matter of J-Y-C-*, 24 I&N Dec. 260, 266 (BIA 2007) (concluding the respondent failed to meet the burden for asylum due to a lack of credibility); *Matter of M-S-*, 21 I&N Dec. 125, 129 (BIA 1995) (same); *see also Parada v. Sessions*, 902 F.3d 901, 909 (9th Cir. 2018) (reasoning that for an individual to establish a well-founded fear of persecution, the claim must be subjectively genuine and objectively reasonable). Accordingly, the Court will deny Respondent's application for asylum.

### D.    Withholding of Removal under INA section 241(b)(3)

Again, Respondent's claim was not credible and was not independently established, and on this basis alone, he is not eligible for withholding of removal under the INA. *See Matter of M-S-*, 21 I&N Dec. at 129 (reasoning that a lack of credibility results in a denial of withholding of removal under the INA). Accordingly, the Court will deny Respondent's application for withholding of removal under the INA.

### E.    Protection under the CAT

Pursuant to the CAT, the United States may not remove an alien to a country where it is more likely than not that he will be tortured. *See* 8 C.F.R. § 1208.16(a) (2021), (c)(2). Torture is an extreme form of cruel and inhuman treatment, defined as any act that is specifically intended to inflict severe pain or suffering, whether physical or mental. *See Matter of J-R-G-P-*, 27 I&N Dec. 482, 484 (BIA 2018); 8 C.F.R. § 1208.18(a)(1), (a)(5). The act must be directed against a person in the torturer's custody or physical control and must be inflicted by or with the consent, acquiescence, or willful blindness of a public official or other person acting in an official capacity. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir. 2003); 8 C.F.R. § 1208.18(a)(1). Acquiescence only requires that a public official be aware of such activity and breach a legal responsibility to intervene to prevent it. *See Zheng*, 332 F.3d at 1194; 8 C.F.R. § 1208.18(a)(7).

A respondent seeking protection under the CAT bears the burden of establishing that it is more likely than not that he will be tortured. *See* 8 C.F.R. § 1208.16(c)(2). To do so, he "must show both a greater than 50 percent chance that he will be tortured . . . and that a public official

would inflict, instigate, consent to or acquiesce in that torture." *Madrigal v. Holder*, 716 F.3d 499, 508 (9th Cir. 2013) (citations omitted). In assessing whether it is more likely than not a respondent will be tortured, all evidence relevant to the possibility of future torture should be considered. Such evidence includes, but is not limited to: (1) evidence of past torture inflicted upon the respondent; (2) evidence that the respondent could relocate to a part of the country of removal where he is not likely to be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal, where applicable; and (4) other relevant information regarding conditions in the country of removal. *See* 8 C.F.R. § 1208.16(c)(3).

As discussed above, neither Respondent nor his wife testified credibly and the claim was not otherwise established. Thus, Respondent did not establish that he suffered past harm, much less torture, in Pakistan. *See Nuru v. Gonzalez*, 404 F.3d 1207, 1217 (9th Cir. 2005) ("[p]ast torture is the first factor we consider in evaluating the likelihood of future torture because past conduct frequently tells us much about how an individual or a government will behave in the future."). Respondent's and his wife's lack of credibly also significantly undermines any claim that he will be tortured in the future. *See Shrestha*, 590 F.3d at 1048–49 (observing that while "[a]n adverse credibility determination is not necessarily a death knell to CAT protection," when the respondent fails to testify credibly the IJ "would have to find that the reports alone compelled the conclusion that he is more likely than not to be tortured"). As also discussed above, Respondent did not establish, independently from his incredible testimony, a likelihood of future torture.

In sum, on this record, the Court cannot conclude that Respondent would be subject to a particularized risk of torture by or with the acquiescence of the Pakistani government. *See Alphonsus v. Holder*, 705 F.3d 1031, 1049 (9th Cir. 2013) ("Despite the troubling country reports, the record evidence does not compel the conclusion that [the respondent] himself will be, more likely than not, tortured upon his return.") (emphasis in original), *abrogated on other grounds by Guerrero v. Whitaker*, 908 F.3d 541 (9th. Cir 2018). Accordingly, the Court denies his application for protection under Article III of the CAT.

For the reasons set forth above, the Court will enter the following orders:

## ORDERS

**IT IS ORDERED** that Respondent's motion to oppose evidence be **GRANTED**.

**IT IS FURTHER ORDERED** that Respondent's application for asylum under INA section 208 be **DENIED**.

**IT IS FURTHER ORDERED** that Respondent's application for withholding of removal under INA section 241(b)(3) be **DENIED**.

**IT IS FURTHER ORDERED** that Respondent's application for protection under Article III of the CAT be **DENIED**.

**IT IS FURTHER ORDERED** that Respondent be **REMOVED** from the United States to **PAKISTAN**.

DATE: _2/23/2021_

_Curtis G. White_

**Curtis G. White**
**Immigration Judge**

**Advisal to Respondent:** The Court has ordered you removed from the United States. If you willfully fail or refuse to apply for the required travel documents to depart the United States, to present yourself for removal as instructed, to depart the United States as instructed, or to take any action, or conspire to take any action, to prevent or hamper your departure, you will be subject to a civil monetary penalty of not more than $813 per day you are in violation. INA §§ 240(c)(5), 274D(a); 8 C.F.R. § 1240.13(d).

**Appeal Rights:** All parties have the right to appeal the decision in this case. Any appeal is due at the Board of Immigration Appeals on or before thirty (30) calendar days from the date of service of this Order.

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)          PERSONAL SERVICE (P)
TO:  (  ) ALIEN  (  ) ALIEN c/o Custodial Officer  (M) ALIEN'S ATT/REP  (  ) DHS

DATE: _2/23/202|_          BY COURT STAFF: _____
Attachments: (  ) EOIR-33  (  ) EOIR-28  (  ) Legal Services List  (  ) Other

12

DEPARTMENT OF HOMELAND SECURITY
**NOTICE TO APPEAR**

In removal proceedings under section 240 of the Immigration and Nationality Act:

File No: A203 681 527

In the Matter of:

Respondent: ASGHAR, Mudasar                                      currently residing at:

Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301        (760) 246-3328

(Number, street, city and ZIP code)                    (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States.
2. You are a native of PAKISTAN and a citizen of PAKISTAN.
3. You arrived in the United States at or near CALEXICO, CA, on or about December 29, 2019.
4. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document.
5. You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☒ Section 235(b)(1) order was vacated pursuant to:    ☒ 8CFR 208.30    ☒ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

10250 Rancho Road, Ste. 201A, Adelanto, CA 92301

(Complete Address of Immigration Court, including Room Number, if any)

on ___To be set.___ at ___To be set.___ to show why you should not be removed from the United States based on the
    (Date)            (Time)

charge(s) set forth above.

Date: **FEB 2 8 2020**

SDDO R. Quevedo

(Signature and Title of Issuing Officer) (Sign in ink)

Adelanto, CA

(City and State)

**Notice to Respondent**

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/I-589. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the Internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means that you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Request for Prompt Hearing**

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____          (Signature of Respondent) (Sign in ink)
(Signature and Title of Immigration Officer) (Sign in ink)          Date: _____

**Certificate of Service**

This Notice To Appear was served on the respondent by me on **2/28/2020**, in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person    [ ] by certified mail, returned receipt # _____ requested    [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the **ENGLISH** language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

α _____          _____ DO
(Signature of Respondent if Personally Served) (Sign in ink)          (Signature and Title of officer) (Sign in ink)

DHS Form I-862 (6/19)                                                                    Page 2 of 2

DEPARTMENT OF HOMELAND SECURITY
**NOTICE OF CUSTODY DETERMINATION**

Alien's Name:  **ASGHAR, Mudasar**                                    A-File Number: **203 681 527**

Date: **02/28/2020**

Event ID: **ELS2012000335**                          Subject ID: **367542696**

---

Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be:

☒ Detained by the Department of Homeland Security.

☐ Released (check all that apply):

☐ Under bond in the amount of $ _____

☐ On your own recognizance.

☐ Under other conditions. [Additional document(s) will be provided.]

| R. QUEVEDO | 02/28/2020 @10:00am |
|---|---|
| Name and Signature of Authorized Officer | Date and Time of Custody Determination |
| SDDO | ADELANTO, CA |
| Title | Office Location/Address |

---

You may request a review of this custody determination by an immigration judge.

☒ I acknowledge receipt of this notification, and

☒ I **do** request an immigration judge review of this custody determination.

☐ I **do not** request an immigration judge review of this custody determination.

| _M.A._ | _2/28/20_ |
|---|---|
| Signature of Alien | Date |

---

The contents of this notice were read to    **ASGHAR, Mudasar**    in the _____ language.

|  | (Name of Alien) | (Name of Language) |
|---|---|---|

| /S. RIM | |
|---|---|
| Name and Signature of Officer | Name or Number of Interpreter (if applicable) |
| DO | |
| Title | |

---

5F

U.S. Department of Homeland Security — Subject ID:367542696

# Record of Deportable/Inadmissible Alien

| Field | Value |
|---|---|
| Family Name (CAPS) | ASGHAR, MUDASAR |
| First | |
| Middle | |
| Sex | M |
| Hair | BLK |
| Eyes | BRO |
| Cmplxn | MED |
| Country of Citizenship | PAKISTAN |
| Passport Number and Country of Issue | |
| File Number | CASE No:EL82012000335 A203 681 527 |
| Height | 65 |
| Weight | 159 |
| Occupation | LABORER |
| U.S. Address | IN DHS CUSTODY |
| Scars and Marks | None Visible |
| Date, Place, Time, and Manner of Last Entry | 12/29/2019, 2000, 3 mile(s) W of CAL, PWA (AFOOT) |
| Passenger Boarded at | |
| F.B.I. Number | |
| Marital status | ☐ Single ☐ Divorced ☒ Married ☐ Widower ☐ Separated |
| Number, Street, City, Province (State) and Country of Permanent Residence | CITY OF LAHORE PUNJAB DIVISION LAHORE, DIVISION, PAKISTAN |
| Method of Location/Apprehension | PB |
| Date of Birth | [redacted] Age:36 |
| Date of Action | 01/02/2020 |
| Location Code | ELC/ELS |
| At/Near | CALEXICO, CA |
| Date/Hour | 12/29/2019 2010 |
| City, Province (State) and Country of Birth | LAHORE, DIVISION, PAKISTAN |
| AR | ☒ |
| Form: (Type and No.) Lifted ☐ Not Lifted ☐ | |
| By | FAUSTO LOPEZ |
| NIV Issuing Post and NIV Number | |
| Social Security Account Name | |
| Status at Entry | PWA Mexico |
| Status When Found | TRAVEL/SEEKING |
| Date Visa Issued | |
| Social Security Number | |
| Length of Time Illegally in U.S. | AT ENTRY |
| Immigration Record | POSITIVE - See Narrative |
| Criminal Record | None Known |
| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | See Narrative |
| Number and Nationality of Minor Children | |
| Father's Name, Nationality, and Address, if Known | See Narrative |
| Mother's Present and Maiden Names, Nationality, and Address, if Known | See Narrative |
| Monies Due/Property in U.S. Not in Immediate Possession | None Claimed |
| Fingerprinted? | ☒ Yes ☐ No |
| Systems Checks | See Narrative |
| Charge Code Word(s) | I7A1 |
| Name and Address of (Last)(Current) U.S. Employer | |
| Type of Employment | |
| Salary | |
| Employed from/to | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FINS #:1286273246 I77 #:8900475

Left Index Print

Right Index Print

ARREST COORDINATES:
------------------
Latitude: 32.66352
Longitude: -115.53051

## CREDIBLE FEAR CLAIM

CONSEQUENCE DELIVERY SYSTEM:
----------------------------
Classification: FIRA

Alien has been advised of communication privileges 1/2/2020 GLC (Date/Initials)

GARY L. CORZO
BORDER PATROL AGENT
(Signature and Title of Immigration Officer)

Distribution:

TO A FILE
ELC
ELS

Received (Subject and Documents) (Report of Interview)

Officer: GARY L. CORZO

on: January 02, 2020 at 0721 (time)

Disposition: Expedited Removal with Credible Fear

Examining Officer: ALEXIS S. ELENES

Form I-213 (Rev. 08/01/07) Y

B— Fr— File 3/11/20

U.S. Department of Homeland Security

**Continuation Page for Form** _____ **1213**

| Alien's Name<br>ASGHAR, MUDASAR | File Number<br>A203 681 527<br>Event No:ELS2012000335 | Date<br>01/02/2020 |
|---|---|---|

SPOUSE NAME AND ADDRESS:
-----------------------------

Nationality:PAKISTAN NADEEM, FATIMA
4902 PACIFIC HIGHWAY, SAN DIEGO, CA 92110 UNITED STATES
BLOCK NUMBER 3C FLAG #12
PUNJAB, ISLAMABAD, PAKISTAN

FATHER NAME AND ADDRESS:
-----------------------------

Nationality:PAKISTAN ASGHAR, MUHAMMAD
CITY OF LAHORE PUNJAB DIVISION
LAHORE, DIVISION, PAKISTAN

MOTHER NAME AND ADDRESS:
-----------------------------

Nationality:PAKISTAN ASGHAR, NASREEN
CITY OF LAHORE PUNJAB DIVISION
LAHORE, DIVISION, PAKISTAN

RECORDS CHECKED:
-----------------

ABIS Positive
EARM Negative
IAFIS Negative
NCIC Negative
TECS Positive

NARRATIVE:
-----------

**The subject has the following TECS Hit.  The subject is a suspected human smuggling
facilitator of Pakistani nationals.  The subject is associated with a smuggler known as
Abbas Haider DOB ███████████*

ENCOUNTER:

Border Patrol Agent Fausto Lopez encountered Mudasar ASGHAR in the El Centro Sector's area
of responsibility. Border Patrol Agent Fausto Lopez determined the subject had unlawfully
entered the United States from Mexico, at a time and place other than as designated by the
Secretary of the Department of Homeland Security of the United States.  Mudasar ASGHAR
admitted that he was in the United States illegally. After determining that the subject
was an alien whom illegally entered the United States, the subject was arrested and
transported to the El Centro Sector Processing Center for further processing using the
E3/IDENT and IAFIS Systems.

| Signature<br>GARY L. CORSO | Title<br>BORDER PATROL AGENT |
|---|---|

_2_ of _3_ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security                    Continuation Page for Form _____ I213

| Alien's Name ASGHAR, MUDASAR | File Number A203 681 527 Event No: ELS2012000335 | Date 01/02/2020 |
|---|---|---|

IMMIGRATION/CRIMINAL VIOLATION:

At the El Centro Sector Processing Center, the subject was asked if he wanted to make a Sworn
Statement as part of the Removal Proceedings.  Service Form I-867A was read and explained
to the subject.  ASGHAR stated that he understood and was willing to answer questions and
give a statement without the presence of an attorney. The subject stated that he is a
citizen and national of Pakistan without the necessary legal documents to enter, pass
through, or remain in the United States. The subject also stated that he illegally crossed
the international boundary without being inspected by an Immigration Officer at a
designated Port of Entry.

CONSULAR NOTIFICATION:

ASGHAR was notified of his right to communicate with a consular officer from Pakistan as
per Article 36(a)(b) of the Vienna Convention of Consular Relations.  ASGHAR acknowledged
understanding the right but declined to speak with anyone at this time.  ASGHAR further
stated that he does fear persecution or torture if returned to his country of citizenship.

TRAVEL:

The subject claims that he left Pakistan on July 8, 2019.  From there the subject traveled
to the United Arab Emirates, Brazil, Peru, Ecuador, Colombia, Panama, Costa Rica,
Nicaragua, Honduras, Guatemala and Mexico. The subject claims that he arrived in Mexicali,
Baja California on December 29th.  On that same day he crossed the border and entered the
United States illegally.

DISPOSITION:

The subject is being processed for an Expedited Removal. The subject was apprehended within
14 days of entering the United States and within 100 air miles of the United States /
Mexico international boundary.  ASGHAR claims and appears to be in good health.

IMMIGRATION HISTORY: A203 681 527

CRIMINAL HISTORY: Subject does not have any criminal history. (FBI#

| Signature        GARY L. CORSO | Title        BORDER PATROL AGENT |
|---|---|

3 of 3 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

IMMIGRATION COURT
10250 RANCHO RD., SUITE 201A
ADELANTO, CA  92301

In the Matter of:                              Case No:  A203-681-527
ASGHAR, MUDASAR
  Applicant

CREDIBLE FEAR REVIEW PROCEEDINGS
ORDER OF THE IMMIGRATION JUDGE

A review of the Department of Homeland Security's (DHS) Credible Fear
Determination was held in this matter. Testimony [    ] was [ ✓ ] was not taken
regarding the Applicant's background and the Applicant's fear of returning
to his/her country of origin or last habitual residence.

After de novo consideration of the evidence, the court finds that the
Applicant [   ] is [   ] is not subject to the third-country-transit
asylum eligibility bar, 8 C.F.R. § 1208.13(c)(4), as an alien who entered,
attempted to enter, or arrived in the United States across the southern land
border of the United States on or after July 16, 2019, who did not apply for
protection from persecution or torture in at least one country outside the
alien's country of citizenship, nationality, or last lawful habitual
residence en route to the United States, and who is not a "victim of a
severe form of trafficking" as defined  by 8 C.F.R. § 214.11

After de novo consideration of the evidence, the court finds that:
    [   ] The Applicant [   ] has [   ] has not established a significant
    possibility that the alien could establish eligibility for asylum,
    withholding of removal, or protection under the Convention Against
    Torture. 8 C.F.R. §§ 1003.42(d)(1), 1208.30(g)(2)(iv)(A)-(C).

    [ ✓ ] The Applicant, who is subject to the third-country-transit
    asylum eligibility bar, [ ✓ ] has [   ] has not established a reasonable
    fear of persecution or torture that would entitle the alien to
    withholding of removal or protection under the Convention Against
    Torture. 8 C.F.R. § 1208.30(g)(1)(ii).

ORDER:  It is hereby ordered that the decision of the DHS immigration
        officer is:
            [   ]  Affirmed.  The case is returned to the DHS for removal
                   of the alien.
            [ ✓ ]  Vacated.

This is a final order.  No appeal is available. INA § 235(b)(1)(C);
8 C.F.R. § 1003.42(f).

Date: Feb 26, 2020

                                    LEFT, JAMES M.
                                    Immigration Judge

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:
MAIL [M]   PERSONAL SERVICE (P)   ELECTRONIC SERVICE [E]
TO: [ ] ALIEN  [ ✓ ] ALIEN c/o Custodial Officer  [ ] ALIEN'S ATT/REP  [ ✓ ] DHS
DATE:    2/26/2020        BY: COURT STAFF    ✓ ⌐ ⌐              UQ

U. S. Department of Homeland Security

## Notice of Referral to Immigration Judge

| Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, CA 92301 (760) 246-3328 | Date **FEB 2 0 2020** |
|---|---|
| | A-File    203 681 527 |

| Name    Mudasar ASGHAR | Country of Citizenship    Pakistan |
|---|---|
| Place and Manner of Arrival    Unknown Location; Entered Without Inspection | Date of Arrival    12/29/2019 |

**To immigration judge:**

☒ 1. The above-named alien has been found inadmissible to the United States and ordered removed under section 235(b)(1) of the Immigration and Nationality Act (Act). A copy of the removal order is attached. The alien has requested asylum or protection under the Convention against Torture. An asylum officer has reviewed the matter and concluded that the alien **does not** have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(1)(B)(iii)(III) of the Act and 8 CFR § 208.30(g).

☐ 2. The above-named alien arrived in the United States as a stowaway and has been ordered removed under section 235(a)(2) of the Act. The alien has requested asylum or withholding of removal under the Convention against Torture. An asylum officer has reviewed the matter and concluded that the alien **does not** have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(1)(B)(iii)(III) of the Act.

☐ 3. The above-named alien arrived in the United States in the manner described below and has requested asylum or withholding of removal under the Convention against Torture. The matter is referred for a determination in accordance with 8 CFR § 208.2(c). Arrival category (check one):

☐ Crewmember/applicant ☐ Crewmember/refused ☐ Crewmember/landed
☐ Crewmember/violator ☐ VWP/applicant ☐ VWP/violator
☐ 235(c) order ☐ S-visa nonimmigrant ☐ Stowaway; credible fear determination attached

☐ 4. The above-named alien has been ordered removed by an immigration officer under section 235(b)(1) of the Act. A copy of the removal order is attached. In accordance with section 235(b)(1)(C) of the Act, the matter is referred for review of that order. The above-named alien claims to be (check one):

☐ a United States citizen ☐ a lawful permanent resident alien
☐ an alien granted refugee status under section 207 of the Act ☐ an alien granted asylum under section 208 of the Act

☐ 5. The above-named alien has been ordered removed under section 238(b) of the Act, or the Department of Homeland Security (DHS) has reinstated a prior exclusion, deportation, or removal order of the above-named alien under section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture. An asylum officer has reviewed the claim and concluded that the alien **does not** have a reasonable fear of persecution or torture. The alien has requested a review of that determination in accordance with 8 CFR §§ 208.31(f) and (g).

☐ 6. The above-named alien has been ordered removed under section 238(b) of the Act, or the DHS has reinstated a prior exclusion, deportation, or removal order of the above-named alien under section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture. An asylum officer has reviewed the claim and concluded that the alien **has** a reasonable fear of persecution or torture. The matter has been referred for a determination in accordance with 8 CFR § 208.31(e).

☐ 7. The Secretary of Homeland Security has determined that the release from custody of the above-named alien who is under a final order of removal would pose a special danger to the public according to the standards set in 8 CFR § 241.14(f)(1). The DHS has therefore invoked procedures to continue the alien's detention even though there is no significant likelihood that the alien will be removed from the United States in the reasonably foreseeable future. The matter is referred to the immigration judge for a review of this determination in accordance with 8 CFR § 241.14(g).

Form I-863 (Rev.08/01/07)

U. S. Department of Homeland Security                    **Notice of Referral to Immigration Judge**

## NOTICE TO APPLICANT

You are ordered to report for a hearing before an immigration judge for the reasons stated above. Your hearing is scheduled on

To Be Determined          at     To Be Determined
     (Date)                          (Time)

You are to appear at        10250 Rancho Road, Suite 201A, Adelanto, CA 92301
                                    (Complete office address)

☒ You may be represented in this proceeding, at no expense to the government, by an attorney or other individual authorized and qualified to represent persons before an Immigration Court. If you wish to be so represented, your attorney or representative should appear with you at this hearing. In the event of your release from custody, you must immediately report any change of your address to the Immigration Court on Form EOIR-33, which is provided with this notice. If you fail to appear for a scheduled hearing, a decision may be rendered in your absence.

☒ You may consult with a person or persons of your own choosing prior to your appearance in Immigration Court. Such consultation is at no expense to the government and may not unreasonably delay the process.

☒ Attached is a list of recognized organizations and attorneys that provide free legal service.

_(A) SDJO Gridin_
(Signature and title of immigration officer)

## CERTIFICATE OF SERVICE

☐ The contents of this notice were read and explained to the applicant in the          Urdu          language.

☐ The original of this notice was delivered to the above-named applicant by the undersigned on **FEB 2 0 2020** d the alien has been advised of communication privileges under 8 CFR § 236.1(e). Delivery was made:

    ☐ in person   ☐ by certified mail, return receipt # _____ requested   ☐ by regular mail

(Signature and title of immigration officer)

**Attachments to copy presented to immigration judge:**

☐ Passport                              ☒ Form I-860
☐ Visa                                  ☒ Form I-869
☐ Form I-94                             ☐ Form I-898
☐ Forensic document analysis           ☐ Asylum Officer's reasonable fear determination worksheet (I-899)
☐ Fingerprints and photographs         ☒ Asylum officer's credible fear determination worksheet (I-870)
☐ EOIR-33

☐ FOR 8 CFR 241.14(f) CASES ONLY: Written statement including summary of the basis for the Secretary's determination to continue the alien in detention, and description of the evidence relied on in finding the alien specially dangerous (with supporting documents attached).

☐ FOR 8 CFR 241.14(f) CASES ONLY: Written notice advising the alien of initiation of proceedings and informing alien of procedures governing the Reasonable Cause Hearing at 8 CFR 241.14(h).

☒ Other (specify):    Officer's Notes     1-863, I-867- AB, Asylum officer notes

Form I-863 (Rev.08/01/07)